PETERSON, D/B/A HAPPY HOLLOW GUERNSEY FARM, Respondent, v. GREENWAY, Appellant.

*October 26—November 24, 1964.*

For the appellant there was a brief by *Gwin & Fetzner,* attorneys, and *C. A. Richards* and *John W. Fetzner* of counsel, all of Hudson, and oral agrument by *Mr. Richards.*

For the respondent there was a brief by *Gavic & Jansen,* attorneys, and *William A. Jansen* and *Robert R. Gavic* of counsel, all of Spring Valley, and oral argument by *William A. Jansen.*

FAIRCHILD, J.

"What dire offense from amorous causes springs!
"What mighty contests rise from trivial things!" [1]

There is no serious dispute but that it was defendant's Angus who, in 1960, had Happy Hollow holidays, siring seven calves. Mr. Greenway seems to accept vicarious liability, under sec. 172.01, Stats., for that which Angus wrought. The principal question on appeal is whether there is evidence in the record to support the finding that Angus' efforts caused the deaths of Lena, Lindis and Margarett and destroyed the capacity of Kolleen, Lilac and Lavender to perform as demanded in bovine society.

It is clear enough that, but for Angus' intrusion, the heifers would not have made their debuts until the age of about twenty-one months, and would then have been offered to a registered Guernsey bull. Best-laid schemes agley, Lena became pregnant at six months, Lindis at nine, Margarett at

[1] Alexander Pope, "The Rape of the Lock," Canto 1, Line 1.

thirteen, and Kolleen, Lilac, and Lavender at seventeen. Lena and Lindis died calving, Margarett three or four months after calving. Kolleen, Lilac, and Lavender survived, but declined, though afforded ample and timely opportunities, to submit to the advances of a Guernsey bull. They were ultimately sold for slaughter. Lenore, who had reached the age of twenty-one months before her dalliance with Angus, produced a live calf, was milked, later brought a good price, and seemed little the worse for wear.

Plaintiff testified that the calves were too big in proportion to the heifers. The calves were more blocky, had wider hips and heads than Guernsey calves. Lena and Lindis died in the process of calving or shortly thereafter. Margarett's reproductive organs were stretched out of shape, and sustained a large and unusual tear. He said she was a "pus case" and was put out to pasture. She got no better and finally died. Kolleen was injured by the calf being too big for her. The hips of Lilac and Lavender were stretched apart and he observed damage to their membranes.

The court did not permit plaintiff to answer a number of questions calling for his opinion whether the pregnancy at the respective ages caused the death of three heifers and the rejection of further breeding by three others. He was permitted to state that the damage to Margarett was caused by breeding at an untimely age and to state that all six were bred too young and the breeding at those ages caused the "damage."

Plaintiff was thirty-seven years old and had farmed since age eighteen or nineteen. He had built up his herd of registered Guernseys, with 39 cows being milked, and 90 to 100 animals in all. He had completed a course at a school for cattlemen, studying the reproductive organs of cattle, had attended high-school vocational courses during the winters, and had studied material in the field of genetics. He had

seen close to 1,000 calves born and had assisted with many of them.

Plaintiff's experience and study may well have placed him in a better position to come to a correct conclusion concerning causation than a person not having the same qualifications, and his opinions might have been an aid to the court in the process of fact finding. Receiving his opinion testimony on this subject would not have been an abuse of discretion.[2]

The county court did not file a memorandum nor state on the record the evidence relied on in finding causation. We do not know whether the court relied upon plaintiff's statement, in general terms, that the early breeding caused the damage. This statement was made late in the trial after the court had refused on several occasions to hear plaintiff's opinions on the causal relationship between the early breeding of each heifer and the particular death or condition of that heifer. Under the circumstances we do not consider this one generalized statement a satisfactory foundation for the finding that Angus' activity caused the loss of all six.

Neither does it appear whether the county court considered that the sequence of events themselves placed causation in the field of probabilities rather than mere guessing or conjecture among possibilities. The record indicates that a Guernsey heifer would have more difficulty with a mixed-breed Black Angus calf than with a Guernsey, that the calves were too large for the heifers, that although plaintiff ordinarily loses only one calf out of 20 in his herd, six out of seven of the mixed breed calves did not survive, and that of the seven heifers, Lenore, the one who calved successfully

[2] *Vates v. Cornelius* (1884), 59 Wis. 615, 18 N. W. 474; *Smith v. Atco Co.* (1959), 6 Wis. (2d) 371, 387, 94 N. W. (2d) 697; Anno. 49 A. L. R. (2d) 932, 961, "Admissibility of opinion evidence of lay witnesses as to diseases and physical condition of animals."

and continued in good condition, had reached the age at which plaintiff's heifers are usually bred.

It may be, upon this analysis, that the trier of the facts could properly find, without opinion testimony, that the deaths of Lena and Lindis in the very process of calving were chargeable to Angus and defendant. The question is more doubtful as to Margarett, whose death did not occur for several months after calving. As to the apparent loss of capacity of the other three to breed, we conclude that the present record leaves causation a matter of speculation among possibilities.

The county court allowed as damages the value of the six heifers, less amounts plaintiff received for three of the heifers and for Lenore's calf. The value of the six heifers was deemed to be $3,500. A field representative for the American Guernsey Cattle Club testified he knew the values of Guernseys and had seen plaintiff's heifers before May, 1960. He said that five of them would be worth about $500 per head and the one better animal about $1,000. He did not identify the better animal, nor state why she was better.

At best the finding of causation could only be partially sustained, and it would be impossible to identify which heifer was worth $1,000. We conclude that the appropriate disposition is to reverse the judgment, and direct the county court to set aside finding of fact numbered 8 (stating the damage caused by the breeding by the Angus), to set aside finding of fact numbered 9 insofar as it determines the value of Lena, Lindis, Margarett, Kolleen, Lilac, and Lavender, and to hold such further hearings and hear such additional evidence as may be necessary to resolve the question of the damage caused by the breeding.

*By the Court.*—Judgment reversed, cause remanded for further proceedings in accordance with the opinion on file.

Hallows, J. (*dissenting*). I would affirm. The evidence of damage to the six heifers is undisputed. One hardly

needs more opinion evidence to establish the causal relationship between the early breeding and the damage and the subsequent death of three heifers and the uselessness as dairy cows of the other three. The distinction between a possibility and a probability is a matter of degree in the relationship of cause and effect. What this record lacks in expert testimony is supplied by common sense.

On the further hearing the court should admit the rejected opinion testimony of the plaintiff on causation. Causation and damages are at issue as to each heifer.

This case recalls the famous case of *Kopplin v. Quade* (1911), 145 Wis. 454, 130 N. W. 511, in which Mr. Justice BARNES dealt with what he called a somewhat morganatic *mésalliance* between the "highbrow" thoroughbred Holstein-Friesian heifer, Martha Pietertje Pauline, and a lowly born and nameless plebeian bull, who had similar aspirations beyond his humble station in life.