ARNOLD N. MAY BUILDERS, INC., Plaintiff-Appellant, *v.* NICK S.
BRUKETTA, Defendant-Appellee.

Third District    No. 77-381

Opinion filed June 15, 1978.

Thomas G. West, of West, Neagle & Williamson and Ronald Henson, of Barash & Stoerzbach, both of Galesburg, for appellant.

Kent F. Slater, of Lucie, Heiser & Slater, of Macomb, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

On May 24, 1972, Arnold N. May Builders, Inc., entered into a contract with Nick S. Bruketta for the construction of a cattle confinement building on Bruketta's farm. Mr. Bruketta was in the cattle feeding and sale business. The contract price was $18,472 payable on the following terms: $1,472 on signing of the agreement, $8,500 when the building materials were delivered to the job site, and $8,500 upon completion of the structure.

Bruketta agreed to construct the foundation for the building, and Carl Johnson, an agent for Arnold N. May Builders, Inc., entered into an agreement with a subcontractor, Wayne Cramer, to erect the building over Bruketta's foundation. Thereafter, the building materials were shipped to the Bruketta farm and arrived at the job site sometime during the last two weeks of July or the first week of August.

Work on the building was scheduled to be done in August or September of 1972. The record is not clear what caused the construction delays, but it does reveal that work was not begun by the subcontractor and Mr. Bruketta and Bruketta's sons until November 4, 1972. Progress on the structure was unsatisfactory through the months of November, December, and January, and finally, in February, 1973, employees of May Builders came in and took over the construction project. Mr. Bruketta and his sons continued to work for the May Builders' crew and the building was completed at the beginning of April.

In apparent reliance upon representations that the building would be

completed within approximately five weeks after construction began, Bruketta purchased 322 head of cattle from October 25, 1972, through November 2, 1972. Until the building was completed Bruketta only had an open feed lot to maintain these newly acquired cattle. What is more, that feed lot had not been properly prepared for "wintering" cattle, because again, Bruketta relied upon representations that the building would be complete before the severest winter months of January, February and March.

After May Builders submitted its final invoice of $8,500 to Bruketta, efforts were made by the parties to arrive at a final balance, giving Bruketta credit for labor and materials he had expended. An agreement could not be reached, however, and suit was finally instituted by May Builders to recover. Bruketta responded with a counterclaim for the value of his labor and materials, and also for damages to his cattle which were exposed to winter weather in an open feed lot. Bruketta alleges that the death rate among his herd and the rate of weight gain among the survivors were adversely affected by the exposure.

At trial, the plaintiff, May Builders, stipulated that Bruketta was entitled to a credit for his labor in the amount of $1,779.79. The question of whether any additional credits would be allowable was submitted to the jury as a part of defendant Bruketta's counterclaim. The jury returned its verdict increasing the credit for labor and material by $4,575.61 and, in addition, assessed damages to defendant's cattle in the amount of $19,907.90.

The plaintiff appeals from the verdict on the counterclaim alleging certain errors in admission of evidence at the trial. Specifically plaintiff objected to: (1) testimony by defendant which established an alleged causal connection between exposure to the winter elements and an adverse death rate and rate of weight gain among the herd; and also, testimony by defendant which established the alleged measure of damages suffered by defendant.

The defendant testified that he usually ran herds of cattle through the winter months of from 300 to 500 head, and with proper preparation of the open feed lot in past years his losses were from one to two head of cattle each winter. However, during the winter period in question defendant lost 14 head of cattle. Defendant testified that during the winter in question, that is 1972-1973, he did not prepare the open feed lot as he usually did in reliance on plaintiff's representations as to when the confinement building would be completed.

The following colloquy occurred between defendant and defense counsel:

"Q: Do you have an opinion as to what caused these cattle to die, those 14 you testified to, in January, February, and March, 1973?

A: What made these 14 die?

Q: Yes, do you have an opinion?

Q: Yes, I have an opinion.

Q: What is that opinion?

A: Exposed to the weather and mud too much."

Later in the trial this exchange took place:

"Q: Was your testimony that the lack of winterizing the lot by putting these cobs in, is that correct? [*Sic.*]"

A: That is right, the feed lot should have been ready for the cattle during the winter months.

Q: Based on your total experience then, this is the one factor that attributed to your loss in rate of gain?

A: That is right."

The plaintiff objects to the admission of both of these opinions because it asserts that the responses are speculative, conjectural, and improper opinion evidence.

■■ It is too late in the development of evidence law to argue that defendant Bruketta cannot qualify as an expert on the subject of cattle husbandry, so as to permit him to offer opinions on subjects beyond the ken of the ordinary laymen. Defendant cites examples such as *Dutton v. Rocky Mountain Phosphates* (1968), 151 Mont. 54, 438 P.2d 674, in approving the opinion evidence of a cattle rancher; *Smith v. Atco Co.* (1959), 6 Wis. 2d 371, 94 N.W.2d 697, in approving the opinion evidence of a mink rancher; and *Peterson v. Greenway* (1964), 25 Wis. 2d 493, 131 N.W.2d 343, in approving the opinion evidence of a dairyman. Illinois courts have likewise afforded expert status to those engaged in animal husbandry. (*Pearson v. Zehr* (1891), 138 Ill. 48, 29 N.E. 854; *Walters v. Stacey* (1905), 122 Ill. App. 658.) "An expert has been defined as a person who is qualified, either by actual experience or by careful study, and may be competent to testify as an expert in proper circumstances although his knowledge was acquired through practical experience rather than scientific study, training or research. * * * There is no precise requirement as to the mode in which skill or experience shall have been acquired." *People v. Oberlander* (1969), 109 Ill. App. 2d 469, 248 N.E.2d 805, 807.

■■ Plaintiff misses the mark in contending that Mr. Bruketta is not an expert. There are no hard and fast rules which determine an expert's minimum qualifications, but such determination is within the discretion of the trial judge. In the instant case, defendant Bruketta has been engaged in the cattle business all his life, and since 1962 in his present location. Since 1964, he has maintained a herd of between 300 to 500 head of cattle, fattening those animals for slaughter markets on diets of corn, corn silage and hay. The defendant testified extensively as to his experience with

various cattle diseases, including shipping fever, red nose, black leg, pneumonia and bloat. He recited in detail the mechanics of the cattle farmer's feed-weight gain ratio, and explained what his past experiences were in fattening cattle for the slaughter markets. It is clear that in light of defendant's background he could qualify so as to offer opinion evidence as to matters regarding cattle husbandry, and the trial court did not abuse its discretion in ruling that he had sufficient skill, knowledge and experience in the field.

Opinion evidence must not only be offered by one who possesses sufficient skill, knowledge, and experience, but also, before such evidence becomes admissible it must be weighed for its contribution to the jury's understanding of the facts in issue as opposed to its possible prejudicial effect on the jury's deliberation. A number of factors enter into this balancing or weighing process, including the complexity of the subjects involved, the purpose for which the opinion is offered, the relation to the ultimate issue to be determined, and the danger of undue prejudice.

No longer do Illinois courts adhere to the absolute prohibition against admission of opinion evidence which speaks to the ultimate issue to be determined by the jury. In the case of *Clifford-Jacobs Forging Co. v. Industrial Com.* (1960), 19 Ill. 2d 236, 166 N.E.2d 582, the Illinois Supreme Court reviewed its past decisions and refined the rules concerning the admissibility of opinion evidence. Justice Hershey, writing for a unanimous court, cites approvingly the decision in *Chicago Union Traction Co. v. Roberts* (1907), 229 Ill. 481, 484, 82 N.E. 401, 402, which says:

> "The opinion is permitted to be given to enable the jurors to draw the inferences from the evidence which their want of knowledge would otherwise prevent. * * * [causation] was a question for the jury to determine, but it was *impossible* for them to answer without hearing the opinions of physicians. These opinions did not invade the province of the jury." (Emphasis added.)

We do not believe that Justice Hershey and the court intended to establish a standard of impossibility, that is, that opinion evidence on the ultimate issue of causation could be admitted only if it were impossible for the jury to answer the question without such evidence. Rather, it is clear that the court was expressing a preference for factual as opposed to opinion evidence. As the opinions expressed by experts come closer to the ultimate issue that the jury must determine, the standards by which the opinion's admissibility is determined become ever more strict. The rule of *Clifford-Jacobs* is clear: opinion evidence on the ultimate issue for the jury's determination is admissible. It is equally clear that a shifting standard of admissibility must be applied as the opinion evidence shifts

from answering questions on the outer rim of relevance toward answering the question at the central hub of the controversy.

Two recent decisions by this court serve to illustrate the application of the *Clifford-Jacobs* rule. In the case of *Cunningham v. Yazoo Manufacturing Co.* (1976), 39 Ill. App. 3d 498, 350 N.E.2d 514, the plaintiff was injured in a riding lawn mower accident and filed a products liability action against the manufacturer. The trial court refused to admit opinion evidence as to whether the braking mechanism on the lawn mower was in a dangerous condition, an ultimate issue for the jury to determine. We reversed the judgment of the circuit court after applying the balancing test of *Clifford-Jacobs.* In the products liability action the question of dangerous condition is not on the outer rim of relevance, but instead is one of the ultimate issues at the hub of the controversy that the jury must determine. Therefore, the standard for determining admissibility should be most strictly applied. We recognized that "the safety of the design of a braking system is a fairly complex matter, involving specialized knowledge." (*Cunningham v. Yazoo Manufacturing Co.* (1976), 39 Ill. App. 3d 498, 500, 350 N.E.2d 514, 516.) Considering the complexities involved in the engineering of braking systems and the want of knowledge of the average juror in such fields of science, we concluded that opinion evidence on the ultimate issue should have been admitted. While the court prefers factual evidence, the complexity of the subject matter and the need of the jury to have such subject matter explained weighs heavily in favor of admitting opinion evidence.

The case of *Neal v. Whirl Air Flow Corp.* (1976), 43 Ill. App. 3d 266, 356 N.E.2d 1173, is also illustrative. In that case defendants argued that it was improper to ask a witness to testify as to the ultimate issue and that this testimony improperly infringed on the responsibility of the jury. It was noted that the defendants asked the same question of their expert and he too gave his opinion on the ultimate issue. Thus both plaintiff and defendant had an equal opportunity to place opinion evidence on the ultimate issue before the jury, and neither party could allege that they were unduly prejudiced. It should be noted that a highly complex, pressurized oil sand delivery system was the subject of the opinion testimony. The lack of undue prejudice and the complexity of the subject matter, when weighed against the preference for factual evidence, resulted in a decision to affirm the circuit court's admission of the opinion evidence.

■■ In the instant case, the party-witness, the defendant Bruketta, stated that the cause of death of 14 cattle during the winter of 1972-1973 was exposure to the elements due to a lack of winterizing in the open feed lot. The record makes it clear that the cause of death of these cattle was an

issue in this case, and that the opinion of the defendant was admitted into evidence only after objection by plaintiff's counsel. Following the pattern of *Clifford-Jacobs, Yazoo Manufacturing,* and *Whirl Air Flow,* it is proper to test the admissibility of this opinion on the ultimate issue in light of the complexity of the subject matter, the purpose for which the opinion is offered, and the danger of undue prejudice. This way it may be determined whether the value of the opinion to the jury, in light of its role as finder of fact, tips the scale in favor of admissibility.

The defendant described the winter conditions in the open feed lot to the jury when he said, "[the cattle] just kept working that mud and water together and pretty soon they were up to their bellies in the mud. * * * You check them when you feed them at night and they look normal and the next morning you come in the lot and they would be laying in the mud and they would be plumb shivering. * * * And you know how the ground freezes a little bit, and they would be frozen in there. * * * [They] act like [they] want to get up, but [they] can't get up." This recital by the defendant is an example of the type of factual evidence that the court expressed a preference for in *Clifford-Jacobs.*

Opinions may be admitted when they "enable the jury to draw the inferences from the evidence which their want of knowledge would otherwise prevent." (*Chicago Union Traction Co. v. Roberts* (1907), 229 Ill. 481, 484, 82 N.E. 401, 402.) Based on the factual evidence offered by the witness, there appears to be a negligible need for opinion evidence to explain, elucidate, clarify, or synthesize a complex subject matter for a jury with a want of knowledge. Unlike the necessity of the physician's expertise in *Clifford-Jacobs* or the engineer's expertise in *Yazoo Manufacturing,* the expert in cattle husbandry is not necessary here to understand the conditions which were described.

The complexity of subject matter is simply not a factor in the case at bar. If the opinion evidence in question dealt with an issue in the case which was not the center of controversy, then applying a less severe standard the opinion here would be admissible. Causation is, however, the central issue with regard to the alleged damages to defendant's cattle. The rule in Illinois is that while opinion evidence is admissible even on the ultimate issue for the jury's determination, it is not absolutely admissible in all cases. Like all evidence, the probative value of opinion evidence must be balanced against its potential prejudicial effect and the jury's need. "The real test is whether the testimony makes a real contribution toward the task of reaching an intelligent result." Gard, Illinois Evidence Manual 129 (Cum. Supp. 1976).

We do not find that the purpose for which this opinion evidence is offered is such as would justify its admission by the circuit court. If the witness would have difficulty in testifying without expressing his opinion

on the ultimate issue, where for example industry customs or practices are at issue, then the special purpose for which the opinion is offered has been held as weighing in favor of admission. (*Spiezio v. Commonwealth Edison Co.* (1968), 91 Ill. App. 2d 392, 235 N.E.2d 323, 334.) No such special purpose exists in the case before us. Nor do we find that undue prejudice would result if this opinion evidence were excluded from the jury's consideration.

■■   The policy of the courts of this State has been to scrutinize with care the admission of opinion evidence on the ultimate issue so as to guard the institution of the jury and its role in our judicial process. "While there has been a reluctance to permit expert testimony on many matters on the basis that it invades the province of the jury, confuses the issues and usurps the function of the jury, the trend is to permit expert testimony in matters which are complicated and outside the knowledge or understanding of the average person * * *." (*Miller v. Pillsbury Co.* (1965), 33 Ill. 2d 514, 516, 211 N.E.2d 733, 734.) The opinions of the defendant Bruketta do not meet that test and were improperly admitted into evidence over objection. The plaintiff, Arnold N. May Builders, Inc., is entitled to a new trial where the jury's independence is not obscured.

Because a new trial is necessary to establish causation, and because the measure of damages is inextricably tied to the issue of causation, it would be premature to speculate as to what evidentiary issues might arise with regard to damages at the new trial. We will therefore refrain from discussing the evidentiary issues with regard to damages raised by the appellant's brief. None of the questions presented on this appeal challenged the validity of the jury's verdict of $4,575.61 for labor and material. The circuit court is therefore ordered to enter a judgment for defendant in the amount of $4,575.61. The new trial should be limited to defendant's claim for damage to his cattle.

Affirmed in part and reversed in part; remanded with instructions.

STOUDER, P. J., and ALLOY, J., concur.