JOHN W. BURRIS *et al.*, Plaintiffs-Appellees, v. MADISON COUNTY, Defendant-Appellant.

Fifth District   No. 5—85—0286

Opinion filed April 21, 1987.

Judge & Knight, Ltd., of Park Ridge (Jay S. Judge, Elizabeth A. Brown, Janella L. Barrow, and Patrick J. Fanning, of counsel), for appellant.

Armstrong Law Offices, of Edwardsville (Tad Armstrong, of counsel), for appellee Faye R. Ziegler.

JUSTICE JONES delivered the opinion of the court:

Defendant, Madison County, appeals a judgment rendered for plaintiff, Faye R. Ziegler, upon a jury verdict in the amount of $2,750,000. The plaintiff has filed a cross-appeal from an order of the trial court that denied her pretrial motion *in limine* with respect to evidence of her consumption of alcohol prior to the accident in question. Plaintiff has chosen to merge her argument upon her cross-appeal with her response to defendant's appeal so the issue upon her

cross-appeal need not be separately addressed. We reverse and remand for a new trial.

The case originally involved both multiple plaintiffs and multiple defendants. However, all claims have now been withdrawn except the instant one between Faye R. Ziegler against Madison County. The case arose out of the collision of two cars at a rural intersection in Madison County. The intersection was that of St. Rose Road (Madison County Route 40), an east-west road, with Baumann Road, a north-south road. St. Rose Road was a county road, maintained by the defendant's highway department, and was the preferential road at the intersection. Baumann Road was a township road of Helvetia Township in Madison County and was maintained by the township road commissioner of Helvetia Township. Baumann Road was the county-line road between Madison County and Clinton County, with the county line lying approximately in the middle of the road. Located in the northwest quadrant of this intersection was a stop sign that regulated the traffic southbound on Baumann Road as it approached the intersection with St. Rose Road. The proprietorship and condition of this stop sign at the time of the collision supply the issues of the case.

On June 3, 1982, at 11 p.m., the plaintiff was driving her car southbound on Baumann Road. She had been at a softball park at Pierron, where she had consumed a quantity of beer. She had traveled the road only three or four times previously and was not completely familiar with it. To reach her intended destination she would have had to make a right turn onto St. Rose Road and head west. At the same time John W. Burris was driving his car westbound on St. Rose Road with Regina Berry as a passenger. The cars met and collided in the intersection. All parties received personal injuries, the seriousness of which is not questioned in this appeal.

The condition of the stop sign at the time of the accident was described by several witnesses and was the subject of much argument both before the trial court and this court. Plaintiff's witnesses described the sign variously as lying flat on the ground to being as high as 22 inches off the ground. A police officer described the sign as undamaged by the accident, leaning towards the west, and lying 22 inches off the ground with the face of the sign not perfectly parallel to the ground but slightly tilted toward the north. A volunteer fireman at the scene stated that the sign was down to the northwest at 50° to 80° off vertical.

Two suits were brought by Burris and Berry. They named as defendants Ziegler, Madison County, Helvetia Township, and the Helvetia Township road commissioner. Ziegler filed a counterclaim

against Burris, Madison County, Helvetia Township, and the Helvetia Township road commissioner. By the time of trial Madison County was the only defendant, with Burris, Berry, and Ziegler as plaintiffs. As we have stated, subsequent to the trial the Burris and Berry claims were disposed of so that we consider only the claim of plaintiff Ziegler against Madison County. Plaintiff's complaint alleged that the defendant had negligently breached its duty to maintain and repair the stop sign in question when it knew or should have known that the sign needed maintenance or repair and had failed to maintain an adequate inspection system for the maintenance of the stop sign. Defendant defended upon the basis that it was under no duty to maintain the stop sign and that such duty was that of Helvetia Township, not defendant. Defendant also contended that even if the sign was down it would not be liable to the plaintiff since the sole cause of the accident was plaintiff's failure to yield the right-of-way to the Burris car on her right as she was required to do by section 11—901(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95, par. 11—901(a)). After entry of the judgment in favor of the plaintiff, and the denial of its post-trial motion, defendant appeals, contending that the court erred (1) in granting plaintiff's motion *in limine* to preclude defendant's evidence that would tend to show that the plaintiff was intoxicated at the time of the collision, (2) in its handling of the issue of whether the subject stop sign was within the maintenance jurisdiction of defendant's highway department, and (3) in failing to rule that the sole cause of the accident was plaintiff's failure to yield the right-of-way to the Burris car to her right as they both approached the intersection, as she was required by statute to do.

Prior to the commencement of trial, plaintiff filed a motion *in limine* seeking an order that would exclude any reference to plaintiff's consumption of alcohol prior to the accident and to exclude the results of a blood test that had been made at Belleville Memorial Hospital, where she had been taken for treatment after the collision. In support of her motion plaintiff argued that the test results were unreliable and invalid and that defendant's expert, Dr. Nuernberger, was not qualified to testify as to plaintiff's state of intoxication upon the basis of the test results. Memoranda were submitted. They included a DuPont Automatic Clinical Analyzer Worksheet that disclosed a test result of a blood serum alcohol content of .0766. It was shown that the blood sample had been drawn at the hospital approximately three hours after the accident solely for the purpose of medical treatment, not for purposes of prosecution. A full hearing was held concerning the equipment, the procedures followed, and the qualifications of the

experts. Prior to the commencement of trial, the court entered an order denying plaintiff's motion to exclude evidence of her alcohol consumption.

In their opening statements the attorneys for both the plaintiff and the defendant told the jury of forthcoming evidence of alcohol consumption. The attorney for defendant explained that their evidence would show that plaintiff was intoxicated at the time of the collision. In plaintiff's case in chief, seven witnesses were called to testify to her sobriety. They all stated that although she had drunk some beer, she was not acting otherwise than normal and that the beer had had no noticeable effect. After four weeks of trial, and the close of plaintiff's evidence, the plaintiff again moved for a motion *in limine* to exclude defendant's evidence of plaintiff's alleged intoxication and the result of the blood test, this time upon the basis of *People v. Murphy* (1984), 124 Ill. App. 3d 695, 464 N.E.2d 853. That case held that the results of a blood test for intoxication were inadmissible in a prosecution for reckless homicide because the laboratory technicians who had performed the tests were not certified under sections 12.01 through 12.04 of the Standards and Procedures for Testing Alcohol and/or other Drugs of the Illinois Department of Public Health as provided in section 11–501.2 (Ill. Rev. Stat. 1981, ch. 95½, par. 11–501.2). The defendant conceded that the personnel at the Belleville Memorial Hospital were not certified in accord with the statutory provision reviewed in *Murphy*. Accordingly, solely on the basis of the *Murphy* case, the trial court granted plaintiff's renewed motion *in limine* and excluded any reference to plaintiff's intoxication or blood-test results in defendant's evidence. Because the parties in their opening statements had dwelt at some length with the issue of plaintiff's intoxication, and plaintiff had presented evidence from seven witnesses that she had not been intoxicated, the trial court was placed in a quandary of how to deal with the intoxication issue in light of its exclusion order. The defendant, of course, had strenuously objected to any suggestion that its evidence regarding intoxication or blood-test results be restricted after the issue had been raised to the jury in opening statements and treated heavily by plaintiff's evidence. Such exclusion at the late stage of the trial would be highly prejudicial, if not fatal, to defendant's case. The quandary was resolved by an announcement by the court to the jury just before closing arguments began. The court told the jury that:

> "[D]uring the opening statements you may recall that there was some mention about the issue of intoxication. For certain legal reasons you need not concern yourselves with the issue of

intoxication. It is not involved in this case, and you are not to consider any evidence of drinking as intoxication. From what you have heard you should draw no inference or speculation as to intoxication. So that is not in this case for you to consider at all."

■■■ Subsequent to the verdict and judgment in this case the supreme court issued its decision reversing the appellate court decision in the *Murphy* case. (*People v. Murphy* (1985), 108 Ill. 2d 228, 483 N.E.2d 1288.) The supreme court squarely held that the requirements of section 11—501.2 that the laboratory and technicians be certified by the Department of Public Health were limited to prosecutions for driving under the influence of alcohol. This court recently had occasion to consider the issues presented here in a case similar on its facts with regard to the admissibility of blood-test results in a civil case, *Thomas v. Brandt* (1986), 144 Ill. App. 3d 95, 101, 493 N.E.2d 1142, 1146. In that case we stated:

"The decision in *Murphy* makes it abundantly clear that no public policy of this State bars the admission of evidence of intoxication based on the chemical analysis of a person's blood, taken without his consent, in a civil action, or in a criminal action except as expressly restricted by statute.

Perhaps the above review of prior case law is unnecessary, considering that the reference to 'civil cases' in the statute was likely intended to refer only to ordinance violations. But for the holding of such cases as *Smock v. Highway Commissioner* (1978), 60 Ill. App. 3d 201, 376 N.E.2d 445, it was never reasonable to conclude that the restrictions on the admissibility of blood alcohol tests contained in the Illinois Vehicle Code, should apply to civil litigation where the question of intoxication or the consumption of alcoholic beverage was properly in issue.

Here, as noted in *Murphy*, ordinary standards governing admissibility should apply."

Accordingly, we find that it was error to exclude defendant's evidence regarding plaintiff's possible intoxication as well as the results of the blood test and the expert's interpretation of that result. Such evidence was relevant and material and its exclusion was highly prejudicial to defendant's case. This is especially true where the issue had already been broadly presented to the jury and several of plaintiff's witnesses had pointedly negated plaintiff's intoxication at the time of the accident. The admonition of the trial court to the jury to disregard any issue or evidence regarding plaintiff's drinking or intoxication would not, under the circumstances here, remove the prejudice to

defendant's right to a fair trial. (*Cf. Kelley v. American Motors Corp.* (1985), 130 Ill. App. 3d 662, 474 N.E.2d 814.) We do not criticize the office of an *in limine* order in a trial, for it can be a useful measure for the proper control of evidence to be presented to the jury. As the supreme court noted in *Reidelberger v. Highland Body Shop, Inc.* (1981), 83 Ill. 2d 545, 549, 416 N.E.2d 268, 271:

> "An *in limine* motion permits a party to obtain an order before trial excluding inadmissible evidence and prohibiting interrogation concerning such evidence without the necessity of having the questions asked and objections thereto made in front of the jury. Thus, the moving party will be protected from whatever prejudicial impact the mere asking of the questions and the making of the objections may have upon a jury."

Nevertheless, the supreme court counseled in the *Reidelberger* case that a motion *in limine* should be employed with caution because it may unduly restrict the opposing party's presentation of its case. (*Reidelberger v. Highland Body Shop, Inc.* (1981), 83 Ill. 2d 545, 416 N.E.2d 268; *Duffy v. Midlothian Country Club* (1985), 135 Ill. App. 3d 429, 481 N.E.2d 1037.) That is precisely what occurred here.

Plaintiff now strenuously urges that the blood-test equipment and test results were unreliable and undependable and that Dr. Nuernberger was unqualified as an expert to testify with regard to plaintiff's state of intoxication, or lack thereof, at the time of the accident that had occurred some three hours prior to the drawing of the blood sample. The facts relating to these arguments of the plaintiff were presented in defendant's extensive offer of proof. The plaintiff also contends that defendant may not rely on the expert testimony foundation rule of *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, because all of the facts that Dr. Nuernberger would need to form an opinion were known to him from the information made available to him. Consequently there would be no occasion for Dr. Nuernberger to rely upon facts and information not of record, but known to him as an expert, as permitted by *Wilson v. Clark*. Finally, plaintiff argues that the issue is not to be resolved as a matter of weight and credibility of the evidence because the evidence tendered by the defendant is wholly insufficient to establish defendant's thesis of plaintiff's intoxication and the question should be decided by the court as a matter of law.

■ We must reject all these arguments of the plaintiff because it is our perception that they raise a matter of weight and credibility of the evidence and that the rule of *Wilson v. Clark* is available to permit the admission of the testimony of Dr. Nuernberger as an expert.

This result comes as no surprise to plaintiff since, in its ruling on plaintiff's motion *in limine* made prior to commencement of trial, the trial court denied plaintiff's motion and held the defendant's intoxication evidence to be admissible. In its permissible exercise of discretion on the point, we can find no abuse. We also note that the plaintiff's arguments regarding the admissibility of evidence of the blood test and the application of *Wilson v. Clark* were considered at length in *Thomas v. Brandt*, and we consider our decision there to be dispositive here.

Because of its importance upon retrial, we must give consideration to the second principal issue presented in this appeal. That issue is whether defendant Madison County had a duty to maintain the down stop sign in the northwest quadrant of the intersection of St. Rose Road and Baumann Road. Defendant insisted throughout the trial, and persists here, that the duty to maintain the stop sign had devolved upon Helvetia Township and its road commissioner. The defendant does not cite any statute or Department of Transportation regulation that would either absolve the defendant of the duty to maintain the sign or impose the duty to maintain upon Helvetia Township or its road commissioner. Defendant's position is grounded upon two premises, one, that there was an oral agreement between the county superintendent of highways of defendant and the road commissioner of Helvetia Township whereby the township would assume the responsibility to maintain the sign and, two, that Helvetia Township and its road commissioner were, in fact, maintaining the sign and had been doing so for several years prior to the accident, thus indicating that the duty was theirs.

Without discussing the evidence upon the point in any detail, we easily conclude that the defendant simply failed to produce any credible evidence of any oral agreement regarding the responsibility for maintaining the sign.

As to the second facet of defendant's argument regarding the sign, defendant contends that the sign was within the maintenance jurisdiction of the township and in fact was being, and had been for many years, maintained by the township. These circumstances, defendant reasons, are sufficient to impose the duty to maintain upon the township.

Defendant presented much evidence to show that the sign was located within the right-of-way of Baumann Road, the township road, and that employees of the township road commissioner had repaired the sign on previous occasions. There was evidence that such employees had repaired the sign three days before the accident, that a pass-

erby, a local resident, had called the township the day before the accident to report that the sign was down, and that the employees of the township commissioner had repaired the sign the day after the accident.

Although the evidence is conflicting, it appears established that the sign was originally installed by defendant and had been maintained by defendant. Such maintenance had been continued until such time as defendant's employees noticed that the wood post of the sign, always used by defendant, had been replaced with a metal post. This event caused defendant's employees to cease regular inspection and maintenance of the sign. The sign was the only stop sign on roads of defendant that was not listed on defendant's map of signs, which was used as a guide for inspection and maintenance. The road commissioner and employees of Helvetia Township testified that they were maintaining the sign, not because of any legal duty to do so, but simply as a favor to defendant. We would comment at this point that the fact that defendant was not maintaining the sign at the time of the accident does not absolve it of a duty to maintain.

The trial court obviously found that as a matter of law it was the duty of defendant to maintain the sign and that, if defendant had negligently breached that duty and if the negligent act was the cause of the accident, then defendant would be liable for plaintiff's injuries. In this determination we believe the trial court was correct.

■ It is universally recognized that the question of duty—whether the defendant and the plaintiff stand in such a relationship to one another that the law imposes upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff—is an issue of law for the court. (*Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 440 N.E.2d 96; *Mieher v. Brown* (1973), 54 Ill. 2d 539, 301 N.E.2d 307.) We believe that the trial court correctly performed its function and also correctly deferred to the jury in the performance of its function, the determination of questions of fact.

Prior to trial the plaintiff filed a motion *in limine* which moved for the exclusion of (1) any questions by counsel that would directly or indirectly elicit responses tending to show that defendant's duties were other than as set forth in the complaint and (2) any questions intended to show that defendant could or did delegate its alleged duties to maintain the stop sign. The court granted the motion but also granted the parties the right to present evidence of the factual circumstances of the maintenance of the sign. During the trial the court refined its ruling to simply bar any testimony that included the words "maintenance," "responsibility," "jurisdiction," or "duty."

■■ ■ In the issues instruction given by the court to the jury, the court advised the jury that the defendant had a duty to maintain the stop sign. In so doing the court was properly performing its function of determining the duty issue. The basis for the court's conclusion that the defendant was under a duty to maintain the sign is found in certain statutes and the custom and practice followed by the defendant in its interpretation of those statutes. Section 11—302 (Ill. Rev. Stat. 1981, ch. 95½, par. 11—302) shows a maintenance scheme that effectively establishes what plaintiff refers to as "the larger governmental entity's" duty to maintain stop signs at the intersections of its roads and highways with the roads and highways of a lesser governmental entity. The statute provides:

"Authority to designate through highway and stop and yield intersections. (a) The Department with reference to State highways under its jurisdiction, local authorities and road district highway commissioners with reference to other highways under their jurisdiction may designate through highways and erect stop signs or yield signs at specified *entrances* thereto, or may designate any intersection as a stop intersection or as a yield intersection and erect stop signs or yield signs at one or more entrances to such intersection. *Designation of through highways and stop or yield intersections and the erection of stop signs or yield signs on township or road district roads are subject to the written approval of the county superintendent of highways.*

(b) Every stop sign and yield sign shall conform to the State Manual and Specifications and shall be located as near as practicable to the nearest line of the crosswalk on the near side of the intersection or, if there is no crosswalk, then as close as practicable to the nearest line of the intersecting roadway.

(c) The Department may in its discretion and when traffic conditions warrant such action give preference to traffic upon any of the State highways under its jurisdiction over traffic crossing or entering such highway by erecting appropriate traffic control devices." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 95½, par. 11—302.)

Section 11—304 (Ill. Rev. Stat. 1981, ch. 95½, par. 11—304) continues in the same theme. It provides, in pertinent part:

"Local authorities and road district highway commissioners in their respective maintenance jurisdiction shall place and maintain such traffic-control devices upon highways under their maintenance jurisdiction as are required to indicate and carry

out the provisions of this Chapter, and local traffic ordinances or to regulate, warn, or guide traffic. *** *Placement of traffic-control devices on township or road district roads also shall be subject to the written approval of the County Superintendent of Highways.*" (Emphasis added.)

Other pertinent statutory provisions, which in the interest of brevity we will merely refer to, are sections 5—101.1, 5—101.10, 5—205.5, 5—401, 2—103, 2—202, 2—102, and 2—103 of the Illinois Highway Code (Ill. Rev. Stat. 1981, ch. 121, pars. 5—101.1, 5—101.10, 5—205.5, 5—401, 2—103, 2—202, 2—102, 2—103).

We agree with the plaintiff that there is a maintenance scheme that places responsibility for the erection and maintenance of intersection stop signs upon the larger governmental entity. This proposition is supported by the following testimony given by the county superintendent of highways of defendant:

"Q. Now as a general proposition and your custom and practice in Madison County, Mr. Dietzel, isn't it true that where you have a township—county-township intersection, that's where a township road intersects with a county road, the stop signs controlling the township traffic are installed and maintained by Madison County?

A. As a general rule, yes."

And again by the following question and answer of the same witness:

"Q. Is it basically correct that Madison County has the ultimate decision-making power with respect to the signing of the northwest quadrant and the type of device to be put there?

A. I would say that's correct."

Plaintiff relies heavily on the case of *Bentley v. Saunemin Township* (1980), 83 Ill. 2d 10, 413 N.E.2d 1242, which plaintiff represents to have held that the township had a duty to maintain a stop sign erected by the State at an intersection of a township road with a State highway. However, the correct holding of that case was not that the township had a duty to maintain the sign, but that the township had a duty to maintain the *visibility* of the sign by cutting foliage that had grown upon the right-of-way of the township road so as to obscure the stop sign from approaching traffic.

■ Defendant also cites *Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 450, 404 N.E.2d 213, 220, for this statement of the law:

"Our courts have long recognized that, in the absence of an act by the State which divests a local government of jurisdiction over a highway, a local government has an obligation to maintain public highways within its boundaries in a safe condition."

That statement is, of course, a correct statement of the law and represents the basis for plaintiff's action against the defendant in this case. Defendant also cites certain statutes that impose upon townships the duty to maintain roads and highways under its jurisdiction, including the provision of stop signs. Such statutes do not, however, serve to shift duties imposed upon counties to townships. Nothing else in the *Janssen* case would suggest otherwise.

For the reasons discussed above, the duty issue regarding the stop sign in question has been correctly resolved by the trial court and confirmed by this court and, accordingly, has become the law of the case so as to preclude further litigation upon retrial. *Department of Transportation v. Western National Bank* (1978), 69 Ill. 2d 576, 373 N.E.2d 14; Restatement (Second), Judgments sec. 27, comment *o* (1982).

For the foregoing reasons this cause is reversed and remanded to the trial court for a new trial. Under the circumstances of this case, where Helvetia Township was actually maintaining the stop sign, we cannot say that defendant was guilty of negligence as a matter of law for failing to maintain it. Accordingly, upon retrial the issues to be resolved by the jury will be whether the defendant was negligent in failing to maintain the stop sign, and, if so, whether such negligence was the cause, or one of the causes (upon a comparative negligence basis), of plaintiff's injuries.

■ As a final item, we note that in his closing argument the attorney for the plaintiff told the jury:

"Please understand that you need to be consistent when you answer the special interrogatory. If you grant a verdict in favor of the three plaintiffs then Faye Ziegler cannot have been the sole probable cause, and that interrogatory must be answered no to be consistent."

Although not made an issue in this appeal, we caution that it is reversible error for an attorney to tell the jury that its special verdict should be consistent with its general verdict. *Sommese v. Mailing Brothers, Inc.* (1966), 36 Ill. 2d 263, 222 N.E.2d 468; *Massa v. G. Helmkamp Excavating & Trucking Co.* (1986), 145 Ill. App. 3d 60, 495 N.E.2d 648.

Reversed and remanded for a new trial.

HARRISON and KASSERMAN, JJ., concur.