HARRY WADE *et al.*, Plaintiffs-Appellees, v. THE CITY OF CHICAGO HEIGHTS, Defendants-Appellants.

First District (5th Division) No. 1—96—3929

Opinion filed March 31, 1998.

Gulotta & Kawanna, of Calumet City (Lawrence P. Gulotta and Ronald Kawanna, Jr., of counsel), for appellant.

DiMonte, Schostok & Lizak, of Park Ridge (Michael Lee Tinaglia and Stephen J. Schostok, of counsel), for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

This is the second appeal, following a second trial, involving these parties. Plaintiffs Harry and Joann Wade filed a negligence claim seeking damages for injuries suffered in an accident in which Harry was the driver and sole occupant of a car that struck the east side of a building on the northeast corner of 14th and Wentworth in the City of Chicago Heights. In *Wade v. City of Chicago Heights*, 216 Ill. App. 3d 418, 575 N.E.2d 1288 (1991), *appeal denied*, 141 Ill. 2d 562, 580 N.E.2d 137 (1991) (*Wade I*), defendant City of Chicago Heights (City) appealed the jury's verdict awarding plaintiffs $3,582,627.70 in personal injury damages and $904,166.67 in consortium damages. This court affirmed in part, reversed in part, and remanded for a new trial, with instructions.

After the instant second trial (*Wade II*), the jury awarded plaintiffs $1,923,000 in personal injury damages and $300,000 in consortium damages. The City appeals, alleging error in the circuit court's having: (1) denied the City's motion for a directed verdict or judgment notwithstanding the verdict; (2) permitted a licensed traffic engineer to offer testimony of his opinion regarding the cause of the

accident although he was not an expert in accident reconstruction; (3) refused to allow any evidence of Harry's alcohol consumption or level of intoxication at the time of the accident; and (4) denied the City's motion for a mistrial after a juror admitted visiting the scene of the accident.

The accident occurred at about 3:49 a.m. on May 19, 1982, while Harry, driving his car westbound on 14th Street near its intersection with Wentworth Avenue, lost control of the car and crashed into a brick building. Plaintiffs alleged that the accident was caused by the presence of a construction hole in the middle of 14th Street, which the City had created while performing repairs.

In *Wade II*, testimony previously given under oath by Raymond Rossi, who was unavailable to testify, was read into the record. At the time of the accident, Rossi was the superintendent of the City's water department. Department workers had been assigned to restore water service to an occupied building on 14th Street. A hole was dug in the street, which was subsequently backfilled with gravel two to three inches above the pavement. Workers surrounded the hole with three barricades, the tops of which displayed battery-operated lights. Rossi testified that the batteries could last for more than a month, although in previous deposition testimony he said they last only three to seven days. Rossi did not receive authority from the Illinois Department of Transportation to effect the repairs. No warnings other than the barricades were placed near the hole.

Harry testified that at the time of the accident, he had been working for the Ford Motor Company for 18 years. On May 18, 1982, Harry worked the third shift, 3:30 p.m. to 11:30 p.m., at the end of which he drove to a friend's house in Gary, Indiana. They watched boxing matches for a few hours. Harry left at around 2:30 or 3 a.m., drove south on Calumet Expressway, exited at Route 30, also known as 14th Street, and turned west. Harry drove through two traffic lights, stopping temporarily at the second light before it turned green. He encountered a construction zone about 200 yards west of that intersection, where barrels barricaded several lanes and lights and signs guided motorists, requiring him to change lanes constantly, in a zigzag pattern, for about 1½ miles, as the four-lane highway became a two-lane road. The construction ended one-quarter of a mile before the State Street intersection, where Harry stopped for a traffic light. When the light changed, he continued driving west on 14th Street and next remembered waking up six weeks later at the hospital.

Henry Rice, Jr., a City police officer on May 19, 1982, investigated the accident at 3:51 a.m. and prepared a report. He found Harry un-

conscious in his car, which had extensive damage to the driver's side and was against the east wall of a building located at the northeast corner of 14th Street and Wentworth. While patrolling the area earlier, Officer Rice observed a hole in the road near the intersection of 14th Street and Wentworth, which was filled in and surrounded by three barricades. At least two of the three lights on the barricades, and possibly the third, were working and could be seen from 200 feet away, but after the accident, they had been knocked down, were heavily damaged, and were scattered around the scene, between 15 and 25 feet away from the hole. At least one light on one of the barricades was still flashing. There were tire marks leading from the site of the construction area to the car's final position against the building. His report concluded, "[d]river apparently lost control after striking the barricade 50 feet east of building which he struck."

Gerald Lindgren, a licensed professional engineer, testified for plaintiffs that the City failed to comply with applicable state standards found in the Manual on Uniform Traffic Control Devices (Manual), which discussed traffic safety rules for road work performed within the state. Specifically, the City did not meet the requirements for construction, warning, channelization, and overall safety in performing the construction project. In addition, the barricades used around the construction site were insufficient under the circumstances. Lindgren believed that the City's failure to use warning signs and channel traffic caused Harry to hit the barricades and the hole, and ultimately to collide with the building.

Dr. Robert Clinton Watkins, Jr., testified that he was Harry's family physician, having treated him since 1975. Before the accident, Harry was in good mental and physical health. In May 1982, after the accident, Dr. Watkins examined Harry upon his admission to the hospital. Harry's left eye was severely swollen and was bleeding. A CAT scan revealed a contusion of the brain and brain tissue. After regaining consciousness, Harry complained of persistent headaches. An optic neurologist concluded that Harry was suffering from left optic neuritis, or a degeneration of the optic nerve. Dr. Watkins and other specialists treated Harry at the hospital. Harry regained consciousness by the second hospital day, but was very confused and did not know what had happened. The level of confusion was so unusual that a psychiatrist was called in and, occasionally, restraints were employed. Harry later was sent to the psychiatric unit of a nearby hospital. Dr. Watkins continued to treat Harry until just before the Wade family moved to Nashville. During that time, Harry continued to suffer from headaches and had problems with his vision. Three other doctors examined Harry before trial and offered

testimony regarding the serious nature of Harry's brain, vision and psychological injuries. An economist testified about Harry's pecuniary losses since the accident, which would continue in the future.

The videotaped evidentiary deposition of Thomas Cabello was presented to the jury. Cabello owned a dry cleaning and tailoring business located on 14th Street near the scene of the accident. In May 1982, Cabello observed the construction being performed on 14th Street. The hole created by the construction was present for at least "a couple of weeks" and was surrounded by barricades. Although lights were erected on the barricades, they quickly grew weaker and stopped working after three days. Cabello was at the store when the accident occurred, having slept at the store overnight. Two of the barricades were knocked over after the accident, but the third remained standing. The hole was filled and the barriers taken away the day after the accident.

Marea Wade Foster, Harry's daughter, and plaintiff Joann Wade, Harry's ex-wife, testified regarding the extreme changes in Harry's behavior after the accident and the harsh effect of those changes on their lives. Joann divorced Harry in 1993 after he became physically violent with her on several occasions; before the accident they had a "beautiful relationship."

After the close of plaintiffs' case, the City attempted to introduce evidence that Harry had been drinking alcohol before the accident. The admission of this evidence also was a significant issue during the first trial. See *Wade I*, 216 Ill. App. 3d at 423-28. The circuit court granted plaintiffs' motions *in limine* on this issue before the second trial, barring any evidence or reference to Harry's alleged consumption of alcohol, or of a blood-alcohol test taken at the hospital, unless the City established a proper foundation for the evidence, at which time the City could move to vacate and reconsider the court's decision. Before trial, the City unsuccessfully moved for reconsideration of this order.

Dr. Michael J. Chambliss, a forensic pathologist, testified in an evidence deposition for the purpose of making an offer of proof and establishing a foundation for evidence of alcohol use. Out of 3,000 to 4,000 autopsies he performed at the Cook County medical examiner's office, several hundred involved alcohol-related deaths, and he also performed autopsies in private practice, many of which were alcohol related. He reviewed Harry's medical records, including a blood-alcohol test that revealed Harry's blood-alcohol level was .208, and concluded that a person at this level was under the influence of alcohol, adjudged that Harry was intoxicated and could have suffered a loss of critical judgment, impairment of perception, and a loss of attention span.

With regard to the blood-alcohol test, the parties submitted the following evidence in support of their respective offers of proof. Hospital records indicated that Harry's blood could have been tested by either of two hospital employees with the initials MNT and TAD. The City subpoenaed Thaddeus Dominick, alleging that he had taken and analyzed the blood. In a sworn statement, Dominick testified that neither he nor Marcus Trevino, the other hospital employee, was a licensed phlebotomist. In 1982, there was no special license for phlebotomists. Dominick worked the night shift at the hospital in May 1982. He did not know if he or Trevino drew blood from Harry. He could not tell who drew the blood. Dominick also testified regarding the procedures used by the hospital at that time for drawing blood.

The circuit court refused to admit this evidence, and the City rested. The jury returned a verdict in favor of plaintiffs, as first noted. The City appeals, raising the issues earlier set forth. For the reasons that follow, we affirm in part, reverse in part, and remand for a new trial.

I

■ The City first argues that the circuit court erred in denying its motion for a directed verdict and judgment notwithstanding the verdict because plaintiffs failed to prove the element of causation as a matter of law. A directed verdict or judgment notwithstanding the verdict may be granted when the evidence, viewed in the light most favorable to the opponent, so overwhelmingly favors the moving party that no contrary verdict could stand. *Maple v. Gustafson*, 151 Ill. 2d 445, 453, 603 N.E.2d 508 (1992); *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504 (1967). The court may not enter a judgment notwithstanding the verdict if the evidence, together with reasonable inferences to be drawn from it, demonstrates a substantial factual dispute or the determination regarding conflicting evidence is decisive to the outcome. *Maple*, 151 Ill. 2d at 454.

■ The City raised the same argument regarding proximate cause in *Wade I*. There, this court held that evidence presented at trial suggested:

"Harry's accident could have been proximately caused by his vehicle's coming into contact with the backfilled hole in the alleged manner, to an extent authorizing the submission of the question to the jury." *Wade I*, 216 Ill. App. 3d at 442.

The law of the case doctrine provides that where the evidence on a subsequent appeal is the same, or substantially the same, as that on the previous appeal, the adjudications of the prior appeal become the law of the case. Therefore, questions of law decided on the first ap-

peal are binding upon the circuit court on remand and the appellate court on a subsequent appeal. *Martin v. Federal Life Insurance Co.*, 268 Ill. App. 3d 698, 701, 644 N.E.2d 42 (1994); *Dotson v. Sears, Roebuck & Co.*, 199 Ill. App. 3d 526, 528, 557 N.E.2d 392 (1990). We held that the evidence was sufficient to allow the jury to decide the proximate cause question. In the second trial, the same witnesses testified, offering substantially similar testimony. Under the law of the case doctrine, the issue of proximate cause was properly submitted to the jury. *Strasma v. Rager*, 167 Ill. App. 3d 212, 213, 521 N.E.2d 139 (1988).

The two principal cases cited by the City on this issue, *Geelan v. City of Kankakee*, 239 Ill. App. 3d 528, 530, 605 N.E.2d 1015 (1992), and *Monaghan v. DiPaulo Construction Co.*, 140 Ill. App. 3d 921, 489 N.E.2d 409 (1986), are distinguishable from the present case. In *Geelan*, plaintiff's decedent was driving a car that collided with an underpass pier. Plaintiff claimed defendant was negligent in failing to provide adequate lighting and illumination. *Geelan*, 239 Ill. App. 3d at 529. The court ruled that plaintiff could not establish that defendant's alleged negligence proximately caused the accident, in that it was purely speculative whether poor lighting caused the collision. 239 Ill. App. 3d at 530-31. In *Monaghan*, plaintiff had no recollection of the accident but alleged that his motorcycle struck a median strip. The *Monaghan* court similarly concluded that it was purely speculative whether the motorcycle hit the strip. *Monaghan*, 140 Ill. App. 3d at 924.

Although plaintiffs' evidence in this case was not overwhelming on the proximate cause issue, they did demonstrate that the presence of the hole and barricades could have proximately caused the collision. Evidence from Officer Rice and Cabello established that the barricades were up before the accident, and after the accident they were lying on the ground with evidence of damage. Further, tire marks were seen extending from the site of the construction hole to the car's resting spot. In addition, in contrast to *Geelan* and *Monaghan*, plaintiffs presented evidence that the City violated applicable statutes and regulations in drilling the hole and erecting the barrier. Plaintiffs established a sufficient causal connection between the City's negligent acts and the injuries suffered as a result of the collision to allow the issue to be decided by the jury. *Filipetto v. Village of Wilmette*, 254 Ill. App. 3d 461, 470-71, 627 N.E.2d 60 (1993).

The City argues that the circuit court essentially ruled in its favor when presented with the City's motion for a directed verdict. In denying the motion, the court maintained that "[i]f this matter had been a bench trial, it would go no further than it has, because in my

mind the plaintiff hasn't sustained a burden of proof if I was the trier of fact." As the court explained, however, the jury, not the court, was the trier of fact in this case. As the trier of fact, the jury was responsible for resolving any conflicts in the evidence or inferences to be drawn from the evidence. The court did not err in denying the City's motion for a directed verdict or judgment notwithstanding the verdict.

## II

The City next argues that Lindgren should not have been permitted to offer his opinion on the causation issue because he was not an accident reconstruction expert and he improperly based his opinion on conclusive allegations contained in Officer Rice's police report. The parties do not dispute that Lindgren, a traffic engineer, was qualified to give an opinion regarding appropriate safety standards to be used during road construction and the City's violation of those standards. The City argues, however, that Lindgren could have offered his opinion on that issue without discussing causation. The City further contends that because the causation issue was not complicated or outside the knowledge and understanding of the average person, Lindgren could not offer his opinion on the causation issue without usurping the province of the jury.

■ There no longer exists an absolute prohibition against the admission of expert opinion testimony on an ultimate fact or issue. *Zavala v. Powermatic, Inc.*, 167 Ill. 2d 542, 545, 658 N.E.2d 371 (1995); *Arnold N. May Builders, Inc. v. Bruketta,* 60 Ill. App. 3d 926, 930, 377 N.E.2d 579 (1978). Such testimony does not intrude on the jury's role as fact finder because the jury is not required to accept the expert's conclusion. *Zavala,* 167 Ill. 2d at 545; *Pyskaty v. Oyama,* 266 Ill. App. 3d 801, 820, 641 N.E.2d 552 (1994). The test for the admissibility of expert testimony is whether the expert is qualified to testify and whether it would aid the jurors' understanding of the facts. *Zavala,* 167 Ill. 2d at 546; *Reuter v. Korb,* 248 Ill. App. 3d 142, 158, 616 N.E.2d 1363 (1993). Factors to consider in determining the latter issue include the complexity of the subject involved, the purpose for which the opinion is offered, its relation to the ultimate issue to be determined, and the danger of undue prejudice. *Pyskaty,* 266 Ill. App. 3d at 820; *Arnold,* 60 Ill. App. 3d at 930. The complexity of the issue is a significant factor; the trend is to permit expert testimony in matters that are complicated and outside the knowledge and understanding of the average person. *Pyskaty,* 266 Ill. App. 3d at 820, quoting *Arnold,* 60 Ill. App. 3d at 933. Expert testimony therefore is proper if the evidence offers "knowledge and application of principles of science beyond the ken of the average juror." *Zavala,* 167 Ill. 2d at 546.

■ Defendant insists that Lindgren was not qualified to give his opinion as an accident reconstruction expert. Reconstruction testimony attempts to recreate the accident. *Stricklin v. Chapman*, 197 Ill. App. 3d 385, 389, 554 N.E.2d 658 (1990). Here, Lindgren did not attempt to recreate the accident and, therefore, did not have to qualify as an accident reconstruction expert in order to give an opinion on the causation issue. *Tuttle v. Fruehauf Division of Fruehauf Corp.*, 122 Ill. App. 3d 835, 841, 462 N.E.2d 645 (1984). Lindgren's testimony instead focused on the City's alleged failure to comply with applicable state regulations when it erected the barricades on 14th Street. Lindgren stated that the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—100 *et seq.*) required the City to comply with standards promulgated in the Manual, which sets forth specific requirements for the construction and maintenance of streets and highways. He determined that the City deviated from these standards and explained the steps the City should have taken to comply with the standards. He concluded that the failure to use devices such as warning signs and channelization devices proximately caused the accident, and the use of these devices would have prevented the accident.

Lindgren's testimony involved complex issues regarding the difficulty of repairing streets and highways while maintaining certain safety standards for motorists traveling on those roads during their construction. His testimony focused on the City's failure to comply with those standards when it conducted repairs of the water lines under 14th Street, and the subsequent dangers the construction site posed for motorists, information that was beyond the knowledge of the average person and was admissible at trial.

The City argues that the circuit court should not have admitted the testimony because Lindgren improperly relied on Officer Rice's police report in reaching his conclusions, as Officer Rice was not qualified to render an opinion. The admission of evidence rests within the sound discretion of the circuit court and will not be reversed absent clear abuse. *Pyskaty*, 266 Ill. App. 3d at 808; *Reuter*, 248 Ill. App. 3d at 158. The City did not object to the admission of Officer Rice's report at trial; instead, the City introduced that evidence during its cross-examination of Officer Rice. In cases cited by the City, where the officer was held to be unqualified to state an opinion about the cause of the accident, the officer was inexperienced. In *Thurmond v. Monroe*, 159 Ill. 2d 240, 249, 636 N.E.2d 544 (1994), the officer had been with the department for one year at the time of the accident and had investigated fewer than 20 cases. *Thurmond*, 159 Ill. 2d at 249. In *Stricklin*, the officer had worked for the department for four

months when investigating the case and was asked to recreate the events of the accident beyond his own observations. *Stricklin*, 197 Ill. App. 3d at 389. In contrast, Officer Rice was a 23-year veteran of his department at the time of the accident and based his conclusions regarding the point of impact on physical evidence found at the scene. Lindgren's testimony also is distinguishable from *Reuter*, where the expert based his opinion on assumptions that were inconsistent with the testimony of other witnesses. *Reuter*, 248 Ill. App. 3d at 159. Here, Lindgren relied on competent evidence contained in the record.

The circuit court did not abuse its discretion in admitting Lindgren's testimony on the causation issue.

### III

The City next argues that it should have been permitted to introduce evidence that Harry consumed alcohol on the night of the accident. Plaintiffs argue that this evidence was inadmissible for the following reasons: (1) the City failed to establish that the blood-alcohol test was taken in compliance with required procedures; (2) the City failed to establish the necessary foundation for admitting the lab report containing the test results; and (3) Dr. Chambliss relied on the inadmissible test in offering his opinion regarding Harry's level of intoxication, rendering his testimony inadmissible.

The City sought the admission of Harry's blood-alcohol level as evidence of Harry's alcohol consumption and intoxication at the time of the accident, in order to establish contributory negligence. The City also submitted jury instructions that would allow the jury to consider whether Harry violated several provisions of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1987, ch. 95½, par. 11—100 *et seq.*), and whether this violation constituted *prima facie* evidence of negligence, or required that Harry be presumed to have been under the influence of alcohol.

■ Section 11—501(a) of the Code prohibits a person from driving a vehicle in this state if the concentration of alcohol in the person's blood was greater than .10 or if the person was under the influence. Ill. Rev. Stat. 1987, ch. 95½, pars. 11—501(a)(1), (a)(2) (section 11—501). Section 11—501.2(b)(3) states when it shall be presumed that a person was driving under the influence of alcohol, providing that if "the concentration of alcohol in the person's blood or breath *** was at that time an alcohol concentration of 0.10 or more, it shall be presumed that the person was under the influence of alcohol." Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.2(b)(3).

Plaintiffs argue that evidence of Harry's blood-alcohol test in this case is inadmissible because the City failed to comply with prerequi-

sites for admissibility contained in section 11—501.2(a). Plaintiffs base their argument on *People v. Solis*, 275 Ill. App. 3d 346, 655 N.E.2d 954 (1995), a criminal case cited by the circuit court, which involves a recently enacted provision of the Code that is inapplicable to this case.

Section 11—501.2(a) lists detailed requirements that must be met before "evidence of the concentration of alcohol *** in a person's blood or breath" will be introduced in "the trial of any civil or criminal action or proceeding arising out of an arrest for an offense as defined in Section 11—501." Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.2(a). The City acknowledged before the circuit court that it could not comply with the section 11—501.2(a) requirements, but contends that it was not required to do so in this case.

■ The supreme court recognized the limiting language of section 11—501.2(a) in *People v. Murphy*, 108 Ill. 2d 228, 234-36, 483 N.E.2d 1288 (1985), where the court held that the provision applied only to the offense of driving under the influence, not reckless homicide, and the test results of defendant's blood-alcohol level were admissible under ordinary standards governing the admission of evidence. Several appellate decisions have extended the *Murphy* rule, holding that the requirements in section 11—501.2(a) did not apply to blood-alcohol tests admitted in civil proceedings. *Burris v. Madison County*, 154 Ill. App. 3d 1064, 1069, 507 N.E.2d 1267 (1987); *Thomas v. Brandt*, 144 Ill. App. 3d 95, 100-01, 493 N.E.2d 1142 (1986); *Mulhern v. Talk of the Town, Inc.*, 138 Ill. App. 3d 829, 833, 486 N.E.2d 383 (1985).

■ Utilizing ordinary standards of admissibility to determine whether the circuit court improperly excluded evidence of Henry's blood-alcohol level and other evidence of intoxication, the fact that the technician who drew the blood was not certified does not preclude admission of the test results. *Mulhern*, 138 Ill. App. 3d at 833, citing *Murphy*, 108 Ill. 2d at 236. Testimony concerning procedures used to test a person's blood alcohol go to the weight to be accorded the evidence, not its admissibility. *Thomas*, 144 Ill. App. 3d at 98, 101.

■ Evidence of alcoholic consumption is highly probative; however, it also is so prejudicial that more than mere drinking must be shown; actual intoxication must be established. *Reuter*, 248 Ill. App. 3d at 156; *Marshall v. Osborn*, 213 Ill. App. 3d 134, 140, 571 N.E.2d 492 (1991); *Sandburg-Schiller v. Rosello*, 119 Ill. App. 3d 318, 331, 456 N.E.2d 192 (1983). Previously, a distinction was identified between evidence of alcoholic consumption and intoxication where a party was trying to prove a violation of section 11—501(a). *Wade I*, 216 Ill. App. 3d at 430. In contrast to the first trial, in *Wade II* the

City attempted to submit evidence not only of Harry's blood-alcohol level, and testimony that he consumed several alcoholic drinks, but also expert testimony regarding the effect of that particular amount of alcohol on a person's ability to drive the vehicle. The testimony of Dr. Chambliss and evidence from the blood-alcohol test were admissible to establish intoxication. See *Marshall*, 213 Ill. App. 3d at 141 (holding that the circuit court did not err in admitting evidence of defendant's intoxication through his blood-alcohol test and expert testimony).

 Plaintiffs next argue that the City failed to establish the proper foundation for admitting the blood-alcohol test as a business record. Supreme Court Rule 236 (134 Ill. 2d R. 236(a)) permits the admission of a business record if it was made in the regular course of business. Under this rule, any alterations made to the record affect the probative weight to be given to the documents, not their admissibility. *Progress Printing Corp. v. Jane Byrne Political Committee*, 235 Ill. App. 3d 292, 306, 601 N.E.2d 1055 (1992). Before 1992, hospital records were excluded from this rule. 107 Ill. 2d R. 236(b). The cases cited by plaintiffs regarding the admissibility of hospital records predate the 1992 amendment and therefore are not applicable to this case. The City should have been given the opportunity to establish a foundation for the admission of this evidence in accordance with Rule 236, not section 11—501.2(a). The testimony of Thaddeus Dominick, the medical technician at the hospital, regarding the procedures used to handle blood-alcohol tests performed in the hospital's laboratory, and whether the test was conducted in the ordinary course of business, was relevant to this issue even if Dominick himself did not conduct the test.

 Evidence of Harry's blood-alcohol level at the time of the accident is relevant and highly probative on the issue of whether Harry was intoxicated or under the influence of alcohol at the time of the collision. The circuit court's refusal to admit this evidence deprived the City of the opportunity to prove its theory of the case, that the accident resulted from Harry's own negligence in driving a vehicle while under the influence of alcohol. This error requires that the case be reversed and remanded for a new trial.

 The City also claims that it was entitled to jury instructions containing language from sections 11—501(a) and 11—501.2(b). Plaintiffs argue that if section 11—501.2(a) is inapplicable to the present case, section 11—501.2(b) also should not be applied. We discussed the applicability of section 11—501.2(a) in the context of the admissibility of a blood-alcohol test. Our analysis of section 11—501.2(b) relates to whether the City was entitled to a jury instruction

that a violation of the Vehicle Code could be considered as evidence of negligence.

The City proposed the submission of similar jury instructions in *Wade I*. There, instruction No. 7 stated the provisions of Illinois Pattern Jury Instructions, Civil, No. 60.01 (2d ed. 1971) (hereinafter IPI Civil 2d), as modified by the inclusion of section 11—501(a)(1) language, whereas instruction No. 8 contained the language of IPI Civil 2d No. 60.01 and the presumption stated in section 11—501.2(b)(3). *Wade I*, 216 Ill. App. 3d at 431. We held that instruction No. 7 should have been given to the jury, and the failure to do so constituted reversible error. 216 Ill. App. 3d at 438. Instruction No. 8 would have been proper only if it had been used together with or in reference to section 11—501(a)(2). 216 Ill. App. 3d at 433-34.

During the instant trial, the City proposed that three instructions containing the language of IPI Civil 2d No. 60.01 be submitted to the jury. Instruction No. 8 included section 11—501(a)(2) language; instruction No. 9 incorporated language from section 11—501(a)(1). These two instructions would have permitted the jury to determine whether Harry violated either provision of the Code, and whether to consider such violations as evidence of negligence. See *Wade I*, 216 Ill. App. 3d at 438. Instruction No. 10 stated the section 11—501.2(b)(3) presumption. The circuit court refused to tender these instructions, as no evidence of alcohol use or intoxication was permitted to be introduced at trial.

As explained in *Wade I*, applicable here, had this evidence been admitted, as it should have been in this case, by refusing to tender these instructions the court "deprived the jury from considering the significance of that blood-alcohol level and its possible relationship to Harry's driving and the accident." *Wade I*, 216 Ill. App. 3d at 427.

### IV

Lastly, the City argues that the circuit court erred in denying its motion for a mistrial after a juror revealed that he independently visited the scene of the accident.

Generally, a jury's verdict cannot be impeached by the testimony of the jurors. A juror may, however, testify regarding whether extraneous, prejudicial information was brought to the jury's attention, or whether an outside influence improperly was brought to bear upon any juror. *Birch v. Township of Drummer*, 139 Ill. App. 397, 408, 487 N.E.2d 798 (1985); *Haight v. Aldridge Electric Co.*, 215 Ill. App. 3d 353, 369, 575 N.E.2d 243 (1991). Reversal is not required whenever extraneous or unauthorized information reaches the jury; only when the information prejudices the losing party is reversal

mandated. *Birch*, 139 Ill. App. 3d at 408; *Brown v. Johnson*, 92 Ill. App. 3d 1095, 1100, 416 N.E.2d 799 (1981). The losing party need not prove actual prejudice, but need demonstrate only that the unauthorized information relates directly to an issue in the case and might have improperly influenced the verdict. *Frede v. Downs*, 101 Ill. App. 3d 812, 816, 428 N.E.2d 1035 (1981); *Birch*, 139 Ill. App. 3d at 409. Unauthorized visits to the scene of the accident are presumptively prejudicial. *Brown*, 92 Ill. App. 3d at 1100.

▮ During jury deliberations in this case, the circuit court learned that one of the jurors, Frank Houghee, visited the scene of the accident. The court conducted a *voir dire* of Houghee, who stated that he drove down 14th Street, stopped for a traffic light at the Wentworth intersection, and looked around. Houghee noticed the proximity of the Ford plant and concluded that Harry must have known the barricades were present because he must have driven past that location several times previously. The court conducted a *voir dire* of the other jurors, who said that the extraneous information would not affect their ability to be fair and impartial. Several jurors stated that they believed Houghee had changed his mind about the case after viewing the accident scene.

Houghee's visit to the accident scene was prejudicial to the City. The circumstances present at the accident scene were directly related to one of the core issues of the case, namely, whether the barricades were visible to Harry, such that he could have avoided the collision. Houghee's investigation of the scene also may have led him to change his mind about the verdict and therefore may have improperly influenced the verdict. The circuit court therefore erred in denying the City's motion for a mistrial.

For the reasons set forth, the circuit court's rulings on proximate cause and expert testimony are affirmed, its rulings on alcohol consumption and jury instructions related thereto were reversible error, the jury's verdict in favor of plaintiffs is reversed, and the cause is remanded to the circuit court for a new trial.

Affirmed in part and reversed in part; remanded for a new trial, with directions.

HOFFMAN, P.J., and HOURIHANE, J., concur.