GREGORY FREDE, Plaintiff-Appellant, v. DAVID DOWNS, Defendant-Appellee.—(VAL McDANIELS, Defendant.)

First District (4th Division)    No. 80-2441

Opinion filed November 12, 1981.—Rehearing denied December 21, 1981.

Leon C. Wexler and Harold Liebenson, both of Chicago, for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Norman J. Barry, Jr., and Evan B. Karnes, II, of counsel), for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Gregory Frede, was injured in a boating accident. A juror wrongfully secreted his own book on boating into the jury room. The book had not been referred to during the trial. To a certain extent the book was referred to by the jurors during their deliberations. The jury rendered a verdict for Frede and against Val McDaniels for $250,000. McDaniels has not appealed from the judgment entered on the verdict. The jury also rendered a verdict in favor of David Downs, a codefendant, and against Frede. After the verdict the jury's improper conduct was discovered. The jurors were summoned and questioned *in camera* by the court. An appropriate post-trial motion was made to set aside the verdict as to Downs and also to enter judgment against Downs. The court denied Frede's motion and he brought this appeal.

■■ Before stating the facts in more detail, a discussion of the law as it relates to this general subject is appropriate. A jury verdict may not be impeached by a juror's testimony or an affidavit in an attempt to prove the motive, method or process by which the jury reached its verdict. However, a jury verdict may be impeached by a juror's testimony or affidavit offered to prove "conditions or events brought to the attention of the jury without any attempt to show its effect on the jurors' deliberations or mental processes." *People v. Holmes* (1978), 69 Ill. 2d 507, 512, 372 N.E.2d 656, 658, reversing 41 Ill. App. 3d 956, 354 N.E.2d 611; see Annot., 32 A.L.R.3d 1356 (1970); 28 U.S.C. App. Fed. R. Evid. 606(b) (Supp. 1975).

*Holmes* is instructive not only in its statement of the law but also in its application of the governing law. Both the supreme court and appellate

court opinions will be referred to for the facts. The testimony at the *Holmes* trial showed that at the time of an attempted robbery the ground was covered with snow and the complainant pointed out to the police the heel print which the assailant had left in the snow. The defendant was apprehended near the scene and, for purposes of comparison, one of the arresting officers made him make a heel print in the snow next to the heel print left by the assailant. Nothing was done to preserve the prints in the snow. The complainant testified at trial that the heel consisted "of a disk emblem with a line extending through it." One of the officers stated that the heel prints matched and that they had the "same crack-like indentation." The other officer testified that they matched and there was a "crack extending from the brand name logo toward the corner of the heel." He also testified that the brand name on each heel print was Florsheim.

The defendant denied that he owned or wore Florsheim shoes at that time. He stated that he wore a pair of Italian shoes with the brand name of "Siegard." The defendant attempted to offer into evidence the shoes he claimed to have worn at the time he was arrested, but the trial court denied the admission. In the motion for a new trial it was shown that during the course of the trial several jurors went to a Florsheim shoe store, picked up some of the shoes, and looked at the heels. The court accepted a standard that there must be a probability of prejudice. The court found that the investigation by the jury resulted in an error so prejudicial that the judgment had to be reversed and remanded. The court stated that it did not intend to hold that in every instance in which extraneous or unauthorized information reaches the jury the error will be so prejudicial as to require reversal. However, the court reasoned that the information in *Holmes* was in "the nature of evidence crucial to the question of the defendant's identification with which he had neither been confronted at trial nor had the opportunity to refute." *Holmes*, 69 Ill. 2d 507, 519, 372 N.E.2d 656, 662.

With *Holmes* in mind the instant case should be considered. Frede was a passenger in a power boat which was owned by the Frede family but operated by the codefendant, Downs. It was late in the evening on July 3, 1971. The Frede boat was proceeding north toward Diversey Harbor. It was equipped with a red and green teardrop light on the bow and a white light elevated on a staff on the stern. It was a clear, dark night. As Downs operated the boat he maintained a lookout in the direction in which he was proceeding while a third person in the boat illuminated the water ahead with a hand held spotlight. At the time, they were looking for an unlighted rubber raft which they had spotted in the area earlier. A power boat owned and operated by McDaniels proceeded at a high rate of speed in an east by northeasterly direction. McDaniels' boat struck the Frede boat from an oblique angle at the port stern, cutting the Frede boat

in half. The occupants of the Frede boat did not see the McDaniels' boat until a fraction of a second before the collision.

After the verdict the trial court was informed that a juror had taken a book entitled *Piloting, Seamanship and Small Boat Handling*, by Charles Chapman, into the jury room during the deliberations. The trial court recalled the jury for an *in camera* hearing. In accordance with *Holmes*, the court limited its inquiry to the use of the book rather than its effect, if any, upon the decisionmaking process. Some jurors stated that they glanced at the book or looked at the pictures. One juror stated that the entire jury read the book. Specific portions of the book mentioned by some of the jurors involved the section on the right of way and the responsibilities of the skipper of the boat and also rules of the road for boats.

As to the defendant Downs, the jury had been instructed that Frede's sole claim was that Downs was negligent in failing to keep a proper lookout. The jury was also instructed that every person operating a motor craft must exercise ordinary care at all times to avoid placing himself or others in danger and to exercise ordinary care at all times to avoid a collision. Several statutes were also cited, one of which stated that when boats were approaching each other obliquely or at right angles the boat approaching on the right side has the right of way. Another instruction stated that one boat may overtake another on either side but must grant the right of way to the overtaken boat.

■■ We believe that the circumstances of the case at bar require a reversal of the judgment and a remandment because there was a requisite showing of probability of prejudice. As in *Holmes*, the extraneous information that was improperly brought to the jury's attention was in the nature of evidence appearing on a crucial question, that is the alleged negligence of Downs in failing to keep a proper lookout. Frede had not been confronted with nor given an opportunity to refute what the jurors may have looked at in the book. In determining whether Downs was keeping a proper lookout the jury was instructed that Downs had the duty to exercise ordinary care to avoid a collision and also that in making that determination they should consider the statutes on the right of way. The extent to which the jury read the book is not certain. They did, however, read the rules of the road for boats and the duties of a skipper which relate to this issue of a proper lookout. This may have improperly influenced the verdict. *Heaver v. Ward* (1979), 68 Ill. App. 3d 236, 241, 386 N.E.2d 134, 139.

Downs makes a number of arguments in opposition. He states that *Holmes* articulates not only the standard that there must be a probability of prejudice but also that the burden of proving the probability of prejudice rests on the party attacking the verdict. No citation is given for the proposition that the burden is on the party attacking the verdict. In

*United States ex rel. Tobe v. Bensinger* (7th Cir. 1974), 492 F.2d 232, 238, the court said that communications during deliberations are presumptively prejudicial. The presumption could be rebutted by evidence showing that the communication was harmless or lacked prejudice. In *Heaver* the court reversed and remanded the case for a new trial under circumstances somewhat similar to those in the instant case after concluding that the proponent of the verdict had not shown that it was apparent that no prejudice resulted. *Heaver*, 68 Ill. App. 3d 236, 242, 386 N.E.2d 134, 139.

The extent to which the probability of prejudice must be shown is illustrated in *Holmes*. In essence, the jury had been told by three witnesses that they looked at the prints of the assailant in the snow and compared them to prints made by the shoe the police said the defendant was wearing. Both sets of prints were the same. The three witnesses described the heel mark and one of the witnesses said that it was a Florsheim shoe. The defendant denied that he was wearing a Florsheim shoe. The only thing the jury did was go to a Florsheim shoe store. The extent to which the visit to the shoe store prejudiced the defendant is not apparent on the record. What the observation of a Florsheim shoe heel would add to the resolution of the issue of whether the heel prints were identical seems at most minimal. However, the supreme court characterized this as crucial and reversed the conviction and remanded the matter. In our judgment it is equally crucial in the case at bar that the jury was permitted to consider the book with which Frede had not been confronted and which had references to matters relating to the specific issues with which the jury was confronted.

Downs points out that Frede fails to designate any passage from the book that establishes the probability of prejudice. *Heaver* considered an identical argument but still granted a new trial and commented that the book related to the issues of the case and may have improperly influenced the verdict. *Heaver*, 68 Ill. App. 3d 236, 241, 386 N.E.2d 134, 139.

The judgment of the circuit court is reversed. The evidence presents a question of fact to be considered by the jury. Consequently the cause is remanded for a new trial.

Reversed and remanded.

ROMITI, P. J., and JOHNSON, J., concur.