ROGER DAVIS *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. INTERNATIONAL HARVESTER COMPANY, Defendant-Appellee and Cross-Appellant.

Second District No. 2—87—0349

Opinion filed April 13, 1988.

816

Reese & Reese, of Rockford (Bernard P. Reese, Jr., of counsel), for appellants.

Hugh C. Griffin and Thomas J. Burke, Jr., both of Lord, Bissell & Brook, of Rockford, and John A. Rupp, of Navistar International Transportation Corporation, of Chicago (David P. Faulkner, of counsel), for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Roger Davis was injured when the semitractor he was driving collided with a pickup truck and rolled over. He brought a products liability action against International Harvester Company (Harvester), the manufacturer of the semitractor, alleging that the vehicle's faulty design caused his injuries. Davis' wife, Sharon, also filed a claim against Harvester, for loss of consortium.

Davis' claim alleged that when the pickup truck struck his semitractor, it punched a hole through the tractor's poorly supported left front corner, dislodging a vent box and forcing the vent's sharp edges into Davis' leg. Just prior to trial, Harvester amended its answer to include Davis' execution of a general release as an affirmative defense and then moved for summary judgment based on the release. After a hearing, the trial court denied defendant's motion. A jury subsequently returned a verdict for Harvester.

On appeal, Davis argues that: (1) the trial court erred in denying his motion for a new trial, which was based on his discovery, after trial, that two jurors gave false answers during *voir dire*; (2) the court erred in excluding evidence that Harvester had subsequently changed its semitractor design; (3) the court erred in directing a verdict for defendant on plaintiff's claim for punitive damages; and (4) numerous other errors prejudiced his case. Harvester filed a cross-appeal in which it alleges that the court erred in denying its motion for summary judgment. We affirm the judgment for defendant.

■▪■ Although not raised by plaintiffs, we must initially determine whether defendant has standing to cross-appeal. (See, *e.g., Boles Trucking, Inc. v. O'Connor* (1985), 138 Ill. App. 3d 764, 772.) The denial of a motion for summary judgment is not reviewable on appeal

after a trial on the merits, because the ruling merges into the trial that follows. (See *Romano v. Bittner* (1987), 157 Ill. App. 3d 15, 22; *Paulson v. Suson* (1981), 97 Ill. App. 3d 326, 328.) The reason for applying the merger doctrine is that the subsequent verdict is necessarily based on a more complete presentation of the evidence than was the motion for summary judgment. (*Romano*, 157 Ill. App. 3d at 22; *Paulson*, 97 Ill. App. 3d at 328.) We recognize that Harvester's motion was based on plaintiff's alleged execution of a general release and therefore might more appropriately have been brought as a motion to dismiss plaintiff's complaint. (Ill. Rev. Stat. 1985, ch. 110, par. 2—619(a)(6).) Nevertheless, a party may not appeal from a final judgment which was in no way adverse to him (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 386; *Schmitt v. Wright* (1943), 317 Ill. App. 384, 404), and an appeal would not lie in any event from the denial of a motion to dismiss. (*Boles Trucking*, 138 Ill. App. 3d at 772; *Paulson*, 97 Ill. App. 3d at 328.) While we are free to consider Harvester's arguments as grounds for affirming the trial court's judgment, Harvester clearly lacks standing to appeal. (*Boles Trucking*, 138 Ill. App. 3d at 772.) We therefore dismiss the cross-appeal.

I

Plaintiff's first contention on appeal is that two jurors misrepresented themselves during *voir dire* and that their presence on the jury was so prejudicial to him as to warrant a new trial. He claims that the trial court erred in denying his motion for a new trial and in refusing to permit him to subpoena jurors for an evidentiary hearing on the issue.

Jurors Dodge and Darnell were among a panel of 12 prospective jurors who were asked by the trial court whether they had ever "been sued or sued anyone." Dodge replied that he had been sued in small claims court regarding some defects in a house he had sold. Another prospective juror replied that her husband had sued someone. The remaining prospective jurors, including Darnell, remained silent. In addition, when questioned individually, Darnell testified that she was married and had been married for 37 years. Plaintiff contends that Dodge failed to reveal his involvement in two other prior lawsuits—one in which he was sued by an attorney for fees, and one in which he was sued for divorce—and that Darnell failed to reveal that she had been divorced. Plaintiff raised his objections to Dodge for the first time in a supplement to his post-trial motion nearly two months after the original post-trial motion was filed. He raised his objection to

Darnell over three months later, in an additional supplement to his post-trial motion. Harvester contends that plaintiff has waived this issue by failing to investigate diligently the prospective jurors prior to trial, or at least prior to filing his post-trial motion.

In *Pekelder v. Edgewater Automotive Co.* (1977), 68 Ill. 2d 136, the supreme court held that a motion for a new trial based on jurors' false testimony during *voir dire* should be denied unless the movant establishes both that the juror answered falsely and that prejudice resulted. (68 Ill. 2d at 139.) The issue is primarily left to the discretion of the trial court, which is in the better position to observe the juror and his or her demeanor. 68 Ill. 2d at 139.

We conclude that plaintiff has not demonstrated that he was prejudiced by the jurors' omissions. With respect to Darnell, plaintiff's allegations do not establish that she lied. She was not asked whether she had ever been divorced, and the fact that she had been divorced does not establish that she was not then married or that she had not been married for 37 years.

It is clear, though, that both jurors failed to reveal their involvement in certain prior lawsuits. It is equally clear from the responses of all of the prospective jurors, however, that the attorneys must have realized that the trial court's general question regarding prior lawsuits was inadequate. Jurors Willis and Smith, who were also among those remaining silent after the court's general question, revealed involvement in prior lawsuits upon more specific questioning by the attorneys. Another prospective juror, Juror Shadden, replied "no" to plaintiff's attorney's direct question whether he or any member of his family had been involved in any kind of lawsuit. When the attorney subsequently asked him whether he had ever used a lawyer, however, Shadden replied that he had used one in connection with his divorce. Shadden additionally stated that he had not been satisfied with the way the court system had operated in his case, but that his experience would not affect his judgment in plaintiff's case. Plaintiff's attorney apparently did not consider either Shadden's divorce experience or his omission important, because both parties accepted him as a juror. We may fairly conclude, therefore, that the attorney would have reacted similarly to the divorce experiences of Dodge and Darnell had they been revealed. In addition, both jurors revealed prior litigation experience (Dodge as a litigant and Darnell as a juror) and each stated that those experiences would not affect his or her judgment in plaintiff's case. We conclude that the additional information gained about the jurors does not indicate that they were biased against either party and does not negate plaintiff's earlier conclusion that they were

impartial. See *Kingston v. Turner* (1987), 115 Ill. 2d 445, 466.

■ We also do not believe the court erred in refusing to permit plaintiff to subpoena the jurors for an evidentiary hearing. This court has held that a hearing is necessary where there is no record of the *voir dire* available and subsequently discovered information indicates that one or more of the jurors may have been directly prejudiced against one of the parties. (*Schulz v. Rockwell Manufacturing Co.* (1982), 108 Ill. App. 3d 113.) Here, however, a complete record of the *voir dire* was available, and plaintiff was able to articulate only very speculative theories of potential prejudice. We find no error in the court's refusal to permit plaintiff to subpoena the jurors.

■ We summarily reject plaintiff's contention that the jurors' false answers violated his statutory right to challenge them for cause. (See Ill. Rev. Stat. 1985, ch. 78, par. 14.) A juror's involvement in prior, unrelated litigation is not enough to establish even the suspicion of bias or partiality. And even if it were established, a suspicion of bias is insufficient to disqualify a juror for cause. *People v. Cole* (1973), 54 Ill. 2d 401, 415.

We also find merit in Harvester's contention that plaintiff waived this issue by waiting until after the verdict to investigate the prospective jurors. Plaintiff discovered the jurors' involvement in prior suits long after trial, by investigating public records which were available to him during the *voir dire* and over the course of the trial. While we do not hold that no challenge may be made to jurors after trial based on information which might have been discovered prior to or during trial (see, *e.g.*, *Schulz v. Rockwell Manufacturing Co.* (1982), 108 Ill. App. 3d 113 (reversing for a new trial based on such a challenge)), we agree that "[i]t is not in the interest of justice to have counsel wait until a case is lost to make inquiry in depth concerning the selected jurors to use in securing a new trial, when the information is readily available to counsel before or during trial." *Morrison v. Ted Wilkerson, Inc.* (W.D. Mo. 1971), 343 F. Supp. 1319, 1333.

## II

Plaintiff next contends that the trial court erred in refusing to allow testimony regarding a subsequent design change by Harvester. Plaintiff sought to introduce evidence that Harvester altered the design of its semitractor cabs in 1981 and that the new model had no vent opening on the driver's side of the cab. The court excluded the evidence when Harvester stipulated that the air vent of its model 4070-B semitractor cab (the model which plaintiff was driving) "could have been feasibly placed in areas other than the front left cab."

Plaintiff contends that evidence of the post-occurrence change was admissible notwithstanding the stipulation.

■ As a general rule, evidence of subsequent remedial measures is not admissible to prove negligence or culpable conduct. (See *Hodges v. Percival* (1890), 132 Ill. 53; *Day v. Barber-Colman Co.* (1956), 10 Ill. App. 2d 494.) The rationale for the rule is that defendants should not be deterred from making repairs or modifications which will increase safety by the concern that the plaintiff might use those measures as evidence of past negligence. *Hodges*, 132 Ill. at 56-57.

■ Plaintiff argues that the rule should not be applied in products liability actions, in which the focus is on the condition of the product rather than the conduct of the defendant. We note that the Illinois rule is comparable to Rule 407 of the Federal Rules of Evidence, which the Federal Court of Appeals has overwhelmingly found applicable to products liability actions notwithstanding similar arguments against its use. (See *Gauthier v. AMF, Inc.* (9th Cir. 1986), 788 F.2d 634, 636-37 (discussing the arguments usually advanced against using Rule 407 in products liability actions and noting that only the Tenth Circuit has found the rule inapplicable).) We agree with the conclusion reached by the Seventh Circuit Court of Appeals that a defendant's incentive to adopt safety measures will be reduced if evidence of those measures is admissible to establish liability, regardless of whether the basis of that liability is negligence or the inherent dangerousness of its product. *Flaminio v. Honda Motor Co.* (7th Cir. 1984), 733 F.2d 463, 469; see also *Gauthier*, 788 F.2d at 637.

■ Illinois courts permit evidence of subsequent remedial measures to be used for other purposes, however, such as to show the feasibility of precautionary measures. (See E. Cleary & M. Graham, Handbook of Illinois Evidence §407.1, at 182-83 (4th ed. 1984); see also *Gauthier*, 788 F.2d at 637 (noting that evidence of subsequent design changes is admissible in Federal courts to demonstrate feasibility of alternative designs if feasibility is controverted).) In *Sutkowski v. Universal Marion Corp.* (1972), 5 Ill. App. 3d 313, the court held that, since the existence of feasible alternative designs is relevant in products liability cases and may be established by expert testimony or by evidence that other manufacturers used such designs, "evidence of a post occurrence change is equally relevant and material in determining that a design alternative is feasible." (5 Ill. App. 3d at 319.) The *Sutkowski* court thus found post-occurrence modifications admissible in products liability actions for the limited purpose of establishing that safer design alternatives were feasible. See *Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, 115 (citing *Sutkowski* as holding that evi-

dence of post-occurrence changes is relevant in product liability cases "in determining that an alternative design was feasible").

The *Sutkowski* holding was either misconstrued or summarily expanded by the Appellate Court for the First District in *Burke v. Illinois Power Co.* (1978), 57 Ill. App. 3d 498, to make evidence of post-occurrence changes generally admissible in strict liability actions. (See *Oberst v. International Harvester Co.* (7th Cir. 1980), 640 F.2d 863, 866 n.5 (concluding that the authorities cited in *Burke* do not support its holding).) The *Burke* court cited *Sutkowski* as authority for its holding that "[a]lthough testimony of a post-occurrence change would be improper in a negligence action, \*\*\* [i]n strict liability cases such post-occurrence changes properly may be introduced into evidence." (*Burke*, 57 Ill. App. 3d at 514; see also *Millette v. Radosta* (1980), 84 Ill. App. 3d 5, 19 (following the rule stated in *Burke*).) The First District has apparently retreated from that position, however, as more recent First District cases have once again stated that evidence of post-occurrence product changes is admissible to demonstrate the existence of feasible alternatives. (*Schaffner v. Chicago & North Western Transportation Co.* (1987), 161 Ill. App. 3d 742, 754; *Tennant v. Clark Equipment Co.* (1986), 143 Ill. App. 3d 28, 33; *Lundy v. Whiting Corp.* (1981), 93 Ill. App. 3d 244, 252; see also *Smith v. Verson Allsteel Press Co.* (1979), 74 Ill. App. 3d 818, 828; *Christopherson v. Hyster Co.* (1978), 58 Ill. App. 3d 791, 802-03.) We therefore recognize only the narrower view that evidence of post-occurrence changes is admissible in this State in strict liability actions to establish that an alternative product design was feasible.

Plaintiff correctly asserts that *Holmes v. Sahara Coal Co.* (1985), 131 Ill. App. 3d 666, held that evidence of a post-occurrence change was admissible notwithstanding the defendant's stipulation that there was a feasible alternative design which would have prevented plaintiff's injury. The *Holmes* court, however, based its decision on the *Burke* ruling that such evidence is generally admissible in strict liability cases. (*Holmes*, 131 Ill. App. 3d at 673 (concluding that the defendant's stipulation "cannot reasonably be characterized as a concession that [defendant's] actual design resulted in a defective product").) The *Holmes* court apparently concluded that evidence of a post-occurrence change is admissible to prove the ultimate fact that the defendant's product was defective as originally designed. As stated above, however, we find evidence of a post-occurrence change to be admissible to prove only that an alternative design was feasible.

■ Plaintiff next argues that, even if the evidence was admissible only on the issue of feasibility, the court erred in excluding evi-

dence of the actual design changes based solely on Harvester's bland admission that it would have been feasible to place the vent elsewhere. (*Cf.* 73 Am. Jur. 2d *Stipulations* §§1, 15 (1974) (noting that some stipulations are actually admissions rather than agreements).) Dean Wigmore stated that a trial court may exclude evidence on an issue which has been judicially admitted because: (1) the evidence is no longer relevant to the issues remaining in the case; (2) the evidence may be superfluous and confusing; and (3) the other party may not necessarily be entitled to the additional dramatic force of the evidence (which the admission is, in fact, frequently designed to obviate). (9 Wigmore, Evidence §2591, at 824 (Chadbourn rev. ed. 1981).) Wigmore concluded, however, that, because "a colorless admission *** may sometimes have the effect of depriving the party of the legitimate *moral force of his evidence*," there should be no absolute rule and the admission or exclusion of additional evidence should be left to the trial court's discretion. (Emphasis in original.) 9 Wigmore, Evidence §2591, at 824-25 (Chadbourn rev. ed. 1981); see also 75 Am. Jur. 2d *Trial* §133 (1974) (concluding that the matter rests in the discretion of the trial judge); *cf. People v. Munday* (1920), 293 Ill. 191, 206 (holding that a criminal defendant may not preclude the introduction of evidence by admitting certain facts). But see *People v. Del Prete* (1936), 364 Ill. 376, 379 (finding that the trial court abused its discretion in allowing the prosecution to examine the defendant in detail regarding a prior crime which he had admitted).

Had the trial court admitted the evidence in the instant case, it would have risked the jury's drawing the improper inference that Harvester changed its design because it recognized that its product was dangerously defective. In addition, the evidence was not critical to plaintiff on the issue of feasible alternative designs. In addition to Harvester's stipulation, the testimony of plaintiff's expert witnesses established that most other semitractor manufacturers did not place vent openings on the driver's side of their cabs. The potential unfair prejudice to Harvester therefore substantially outweighed the probative value of the evidence. (See E. Cleary & M. Graham, Handbook of Illinois Evidence §403.1, at 149-50 (4th ed. 1984) (regarding the appropriate standard for excluding prejudicial evidence).) There was, in fact, no genuine dispute regarding the feasibility of alternative designs. (See *Coshenet v. Holub* (1980), 80 Ill. App. 3d 430, 431-32 (holding that evidence of subsequent repairs is not admissible to show control of premises where there is no genuine dispute regarding that issue).) Rather, Harvester argued that the placement of its vent was not a proximate cause of plaintiff's injuries. We therefore conclude

that the trial court did not abuse its discretion in accepting Harvester's admission and excluding plaintiff's evidence of subsequent design changes.

■■ We additionally reject plaintiff's related contention that the trial court erred in excluding photographic evidence of tractors designed by other manufacturers which had no vent on the driver's side of the cab. The evidence would merely have been cumulative of testimony by plaintiff's expert that he was able to find only one other manufacturer who placed a vent in that area. The extent to which a party may present evidence on a particular issue is largely within the discretion of the trial court. (See *People v. Williams* (1983), 97 Ill. 2d 252, 292.) We find no abuse of that discretion here.

■■ Nor do we find any error in the court's exclusion of 82 photographs of damaged trucks which plaintiff offered to demonstrate a propensity of the vent area to crack on impact. Evidence of prior accidents is admissible to demonstrate that a vehicle is dangerous if the proponent establishes that the accidents occurred in a substantially similar manner. (*Rucker v. Norfolk & Western Ry. Co.* (1979), 77 Ill. 2d 434, 441.) The foundation requirement is not a stringent one, as the proponent of the evidence need not demonstrate that the accidents were identical or that the impact in each was with a vehicle or device similar to the one causing plaintiff's injuries. (77 Ill. 2d at 441.) Plaintiff failed to meet the foundation requirement here, however, as he provided no information at all regarding the circumstances under which the photographed vehicles were damaged.

### III

Plaintiff next contends that the trial court erred in directing a verdict for defendant on his punitive damages claim for willful and wanton conduct by Harvester. In light of the jury's verdict in favor of Harvester, which we here affirm, any error in directing a verdict for defendant on these counts must be deemed harmless. (See *Ritter v. Ferenczi* (1973), 16 Ill. App. 3d 218, 222.) We conclude, however, that the directed verdict was not erroneous.

■■ "The question of willful and wanton conduct is essentially whether the failure to exercise care is so gross that it shows a lack of regard for the safety of others." (*Moore v. Jewel Tea Co.* (1969), 116 Ill. App. 2d 109, 136, *aff'd* (1970), 46 Ill. 2d 288.) To support a punitive damage award for willful and wanton conduct, the plaintiff must produce evidence of defendant's "conscious disregard for the safety of others." (*Collins v. Interroyal Corp.* (1984), 126 Ill. App. 3d 244, 256.) The plaintiff must establish "knowledge of the defect, knowl-

edge or notice that the defect was likely to cause injury and failure to warn of or remedy a known defect or take some other affirmative action to avoid injury." *Collins v. Interroyal Corp.*, 126 Ill. App. 3d at 256.

Plaintiff failed to produce evidence that Harvester was aware of the dangerous condition in its semitractor cab. There was no evidence produced that Harvester had received complaints of similar accidents or injuries, and the conclusion by plaintiff's expert that the vehicle was unreasonably dangerous did not establish that Harvester knew or should have known that the vehicle was defective and likely to cause injury. See, *e.g., Moore v. Remington Arms Co.* (1981), 100 Ill. App. 3d 1102, 1115-16.

■■■ Nor can we accept plaintiff's contention that he was denied the opportunity to establish Harvester's willful and wanton conduct through evidence of a post-occurrence change. In *Collins v. Interroyal Corp.* (1984), 126 Ill. App. 3d 244, on which plaintiff relies, the court held that evidence of a subsequent design change was admissible to demonstrate willful and wanton conduct by the defendant. The evidence offered in *Collins*, however, demonstrated that the defendant had implemented a new design, but willfully chose not to incorporate into it a minor change which would have corrected a known defect. (126 Ill. App. 3d at 251.) The evidence Davis sought to introduce here was merely that, in subsequently redesigning its semitractor cab, Harvester *removed* the alleged defect. We therefore conclude that the evidence was not probative of Harvester's willful disregard for the safety of others. The court properly directed a verdict on these counts for defendant. See *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.

## IV

Plaintiff alleges numerous additional errors by the trial court, each of which we will address only briefly.

■■■ Plaintiff contends that the trial court erred in requiring one of his experts to answer a hypothetical question regarding safety features which might have prevented plaintiff's injury, rather than permitting him to render an opinion based on facts not in evidence. An expert may ordinarily state an opinion without first disclosing the facts or data on which it is based. (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 194 (adopting Rules 703 and 705 of the Federal Rules of Evidence).) However, the trial court may require disclosure of the basis for an expert's opinion in advance (see E. Cleary & M. Graham, Handbook of Illinois Evidence §705.1, at 492-93 (4th ed. 1984)), as the

court below apparently did. Contrary to plaintiff's contention, however, the court required neither an extensive foundation for the expert's conclusion nor the use of hypothetical questions. We find no error in any case, as plaintiff concedes that the witness was allowed to state his opinion. See *Wilson v. Clark*, 84 Ill. 2d at 191.

██ We similarly conclude that no prejudice could have resulted to plaintiff from the court's refusal to allow another of plaintiff's experts to testify regarding statistical data on which he based his opinion. An expert may disclose facts or data not in evidence on which his opinion is based. (See E. Cleary & M. Graham, Handbook of Illinois Evidence §705.1, at 493 (4th ed. 1984).) Plaintiff's expert was permitted to render his opinion that the impact to the cab of plaintiff's semitractor was foreseeable, because any vehicle the size of a pickup truck or larger would be large enough to impact with the cab in a collision. He also stated that those vehicles make up a certain portion of all highway traffic. He was not permitted to refer to the Department of Transportation statistics from which he determined the percentages of highway vehicles falling into that category or to state what those percentages were. We cannot conclude that the mere omission of those percentages was prejudicial to plaintiff's case.

██ Plaintiff next contends that the trial court erred in refusing to permit his witness, Harold Dietz, to state his opinion that plaintiff's vehicle was unsafe. Dietz was an occurrence witness and an experienced truck driver. A trial court has broad discretion in determining whether a witness is qualified to render an expert opinion. (*People v. Park* (1978), 72 Ill. 2d 203, 209; *Buford v. Chicago Housing Authority* (1985), 131 Ill. App. 3d 235, 243.) Plaintiff's offer of proof indicates that the witness was prepared simply to state his preference for driving another type of cab and that he had no special education or expertise that would qualify him as an expert for evaluating vehicle safety. We therefore find no abuse of discretion in the court's conclusion that the witness was not qualified to render an opinion regarding the relative safety of Harvester's semitractor cab design. (See, *e.g.*, *Galindo v. Riddell, Inc.* (1982), 107 Ill. App. 3d 139, 146 (concluding that it was error to permit a professional football player to testify regarding the safety of a football helmet).) In addition, Dietz' testimony regarding safety was not an admissible lay opinion, because it went far beyond a report of his observations or of the facts, to which the testimony of a nonexpert witness must ordinarily be confined. *Robinson v. Greeley & Hansen* (1983), 114 Ill. App. 3d 720, 730.

██ Plaintiff next argues that Harvester violated several of its discovery requests. Pursuant to Supreme Court Rule 237 (107 Ill. 2d

R. 237), plaintiff requested that Harvester produce one of its engineers, Michael Shirley, to appear as a witness at trial and produce all reports, memoranda, or other materials relied upon by him. Shirley was called as a witness by both plaintiff and defendant. During cross-examination, plaintiff's counsel asked Shirley whether he had corresponded with another of Harvester's expert witnesses, Russell Noble. Shirley responded that he had, whereupon plaintiff's counsel stated, "You were asked to produce that, and I never saw any of that." The court then spoke with the attorneys outside the jury's presence. Defendant's counsel objected to plaintiff's counsel's implication, in front of the jury, that Harvester failed to produce requested materials. He stated that if plaintiff had requested correspondence he would have received it. The court sustained defendant's objection and noted that plaintiff's production request applied only to materials the expert had relied upon in forming his opinion. Plaintiff does not argue that Shirley relied on the letters, and we therefore cannot conclude that Harvester violated the request. Plaintiff argues on appeal that he also requested by letter that Shirley produce his entire file. However, plaintiff's attorney made that same representation to the trial court and informed the court that he would produce the letter at a later time. He did not do so. We therefore conclude that plaintiff has waived the alleged discovery violation. See *Varady v. Guardian Co.* (1987), 153 Ill. App. 3d 1062, 1070.

We find that plaintiff also waived any alleged violation of his discovery request regarding the production of an article written by Mr. Noble. Harvester's counsel supplied plaintiff with one article that Noble had written and informed the court that he had complied with its order to contact the Society of Automotive Engineers, which apparently published the second article, but that the Society had been unable to locate it. Plaintiff made no further objections or requests for sanctions and therefore waived the alleged violation. See *Varady*, 153 Ill. App. 3d at 1070.

We summarily reject plaintiff's contention that he was not permitted to examine Mr. Noble regarding a conversation he had with Mr. Shirley. The record indicates that the only restriction placed on plaintiff's counsel was that he ask specific questions, rather than asking Noble to relate a two-hour conversation.

Plaintiff next contends that the court erred in refusing to give several of its jury instructions. We disagree. Plaintiff's instruction No. 20 (Illinois Pattern Jury Instructions, Civil, No. 400.10 (2d ed. Supp. 1986) (IPI Civil 2d)), relating to the defendant's exercise of due care, was properly refused because defendant did not produce evi-

dence of due care in the manufacture or inspection of its product, but claimed, as stated in Plaintiff's instruction No. 16, that the product was not unreasonably dangerous and had not caused plaintiff's injuries. (See *Jensen v. Chicago & Western Indiana R.R. Co.* (1981), 94 Ill. App. 3d 915, 929 (stating that instructions may be given only on theories supported by the evidence).) Plaintiff's instructions No. 22 and No. 23 were properly refused as they were not Illinois Pattern Instructions, and they were repetitive of the issues as stated in Plaintiff's instruction No. 16, which was an Illinois Pattern Instruction. See *Balestri v. Terminal Freight Cooperative Association* (1979), 76 Ill. 2d 451, 454-55; *Lewis v. Jones* (1987), 157 Ill. App. 3d 327, 331 (both holding that additional instructions may be used where IPI instructions are inadequate).

We additionally find that the court did not err in giving Defendant's instructions No. 10 and No. 10A (IPI Civil 2d No. 400.01). While the instructions were repetitious, they were neither misstatements of the law nor prejudicial to plaintiff. See *Pease v. Ace Hardware Home Center* (1986), 147 Ill. App. 3d 546, 551.

Plaintiff has cited no relevant authority in support of his remaining contentions in violation of Supreme Court Rule 341(e)(7). (107 Ill. 2d R. 341(e)(7).) We therefore deem those issues waived and will not address them. *People v. Ramirez* (1983), 98 Ill. 2d 439, 472; *People v. Hatfield* (1987), 161 Ill. App. 3d 401, 413; *Di Falco v. Board of Trustees* (1986), 151 Ill. App. 3d 409, 417.

For the reasons stated above, the cross-appeal is dismissed, and the judgment of the circuit court is affirmed.

Cross-appeal dismissed; judgment affirmed.

WOODWARD and REINHARD, JJ., concur.