RICHARD M. STALLINGS, Adm'r of the Estate of Richard R. Stallings, Deceased, Plaintiff-Appellant, v. BLACK AND DECKER (U.S.), INC., Defendant-Appellee.

Fifth District   No. 5—02—0301

Opinion filed August 14, 2003.—Rehearing denied September 15, 2003.

Lawler & Lawler, of Marion, and John Mitchell, of Zeigler, for appellant.

C. Barry Montgomery, Edward J. Murphy, and Alyssa M. Campbell, all of Williams, Montgomery & John, Ltd., of Chicago, and James B. Bleyer, of Bleyer & Bleyer, of Marion, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

The plaintiff, Richard M. Stallings, administrator of the estate of Richard R. Stallings, deceased, brought this action in the circuit court of Williamson County to recover damages for the wrongful death of the decedent. The lawsuit is based on a products liability claim against the manufacturer of a circular saw. The jury found in favor of the defendant, and the administrator appeals, following the denial of post-trial motions. The issues for review are whether the trial court erred in refusing to set aside the verdict after a juror's misconduct was discovered and whether the trial court erred in refusing to allow the plaintiff to put on evidence of an alternative feasible design. We reverse and remand for a new trial.

## I. BACKGROUND

April 17, 1991, began as a normal workday at one of the Stallings'

farms near Carmi, Illinois, but ended in tragedy. Twenty-two-year-old Richard R. Stallings (Ryan), a recent University of Illinois graduate with a degree in animal industries, was one of several family members who ran the family's large grain, cattle, and hog operation. Early that morning, he and his father met to discuss work to be done—which included the repair of a wooden cattle feeder. Leslie Simpson, another farm employee, worked with Ryan most of the day, doing chores and grinding feed. They parted company at about 3:30 in the afternoon, which was the last time anyone saw Ryan alive. That evening, Ryan's uncle, Rex Stallings, had the unfortunate experience of finding Ryan's body in a work shed at the Carmi farm. Ryan was lying facedown on top of a piece of board. There appeared to be a fresh cut in the board, which was splattered with blood. A circular saw was on the workbench behind his body. There was blood and human tissue on the blade and on the guard of the saw. Ryan's carotid artery and jugular vein were severed. He had bled to death.

Richard M. Stallings, Ryan's father, brought suit against the defendant, Black and Decker (U.S.), Inc., a foreign corporation, and Gilbert Stallings, Ryan's grandfather, in the Williamson County circuit court. Following an approved settlement agreement, Gilbert Stallings was dismissed from the suit. The plaintiff's amended complaint against the defendant sounded in negligence and strict liability, alleging that the circular saw that had caused Ryan's death was unreasonably dangerous because it was not equipped with a riving blade to prevent kickback. The defendant prevailed on a summary judgment motion on the issue of proximate cause. The plaintiff appealed and we reversed and remanded for further proceedings. *Stallings v. Black & Decker (U.S.), Inc.*, No. 5—97—0506 (September 30, 1998) (unpublished order pursuant to Supreme Court Rule 23 (166 Ill. 2d R. 23)). The case proceeded to a trial, and the jury returned a verdict for the defendant.

On appeal, the plaintiff argues (1) that the trial court erred in denying his motion for a new trial based on the posttrial discovery of a juror's misconduct and (2) that the trial court erred in refusing to allow the plaintiff to put on evidence of an alternative feasible design, both in his case in chief and in rebuttal.

## II. ANALYSIS

### A. Juror Misconduct

The plaintiff's first contention is that during the course of the trial one of the jurors conducted his own investigation concerning evidence crucial to the case, which presumptively prejudiced the verdict. On review, we determine whether the trial court abused its discretion in ruling that a new trial was not warranted by juror

misconduct. See *Waller v. Bagga*, 219 Ill. App. 3d 542, 549, 579 N.E.2d 1073, 1077 (1991). We find that it did.

Before the presentation of any evidence, the trial judge admonished the jury not to undertake any personal investigation of the case. He ended by stating: "You must rely on the evidence you hear and see in this courtroom and the instructions and the law as I give them to you. Please do not go outside this courtroom for information in connection with this case." Nevertheless, in flagrant disregard of the court's detailed admonishment, one of the jurors, James Bartley, did exactly that—he undertook his own out-of-court investigation.

This fact came to the plaintiff's attention after the verdict but before the posttrial motions. The juror in question spoke privately with the trial judge regarding his conduct, after the plaintiff learned of it. The judge prepared a written statement summarizing the conversation. The statement was placed in the court file, and a copy was given to each of the parties' attorneys. For purposes of the post-trial motions, the parties stipulated as follows:

> "One of the jurors, James Bartley, personally took to investigate riving blades during the trial of the case. This investigation purportedly included going to hardware[-]type stores to look at saws for sale[ ] and talking to a store clerk at one store, True Value Hardware, who did a computer search for the availability of riving blades."

Neither party moved for a hearing to examine Mr. Bartley.

■ In general, a jury verdict cannot be impeached by the testimony of the jurors. *People v. Pitsonbarger*, 205 Ill. 2d 444, 468 (2002). This rule of law promotes the finality of verdicts and protects the privacy of jury deliberations. *Tanner v. United States*, 483 U.S. 107, 119-20, 97 L. Ed. 2d 90, 105-06, 107 S. Ct. 2739, 2747 (1987). The courts, however, distinguish between juror testimony involving the " 'motive, method[,] or process' " of deliberations and juror testimony describing an " 'improper extraneous influence' " on deliberations, carving out an exception to the rule for the latter category of testimony. *Pitsonbarger*, 205 Ill. 2d at 468-69.

The defendant implicitly concedes that Mr. Bartley's extrajudicial inquiry involved an "improper extraneous influence" on the jury deliberations. The defendant argues, however, that the plaintiff does not meet the standard set out by the Illinois Supreme Court in *People v. Holmes*, 69 Ill. 2d 507, 372 N.E.2d 656 (1978). The defendant contends that *Holmes* mandates that a jury verdict can only be set aside if the conduct involved has such a probability that prejudice resulted that the trial inherently lacked due process. See *Holmes*, 69 Ill. 2d at 513, 372 N.E.2d at 659. The plaintiff, on the other hand,

contends that he need only show that the improperly acquired information relates directly to a crucial issue in the case and may have improperly influenced the jury, shifting the burden to the prevailing party to show that no actual prejudice occurred. We agree with the plaintiff and find that the defendant's reliance on the case law that it urges supports its position is misplaced.

■ Because it is impossible to prove whether extraneous information affected jurors' decisions, the courts do not require proof of actual prejudice when determining whether a jury verdict has been tainted. *Macias v. Cincinnati Forte*, 277 Ill. App. 3d 947, 950, 661 N.E.2d 472, 474 (1996). The *Holmes* case, cited by both parties, involved juror misconduct in a criminal trial. Several jurors went to a shoe store to investigate shoe heels after hearing court testimony by police regarding the heel print left at the crime scene by the defendant. *Holmes*, 69 Ill. 2d at 509-10, 372 N.E.2d at 657. The Illinois Supreme Court reversed the conviction and remanded, holding that prejudicial error had resulted because the extraneous information was evidence crucial to the question of the defendant's identification, which the defendant did not have the opportunity to confront or refute, amounting to a probability of prejudice in violation of the defendant's due process rights. *Holmes*, 69 Ill. 2d at 519, 372 N.E.2d at 661-62. Subsequent civil cases have found that a probability or presumption of prejudice exists if the extraneous information bears on a crucial issue in the case and may have improperly influenced the verdict. *Heaver v. Ward*, 68 Ill. App. 3d 236, 241, 386 N.E.2d 134, 139 (1979). After this requisite showing, the burden then shifts to the prevailing party to demonstrate that no prejudice resulted. *Haight v. Aldridge Electric Co.*, 215 Ill. App. 3d 353, 369, 575 N.E.2d 243, 254 (1991); *Frede v. Downs*, 101 Ill. App. 3d 812, 816, 428 N.E.2d 1035, 1037 (1981).

The case before us revolves around the design of a circular saw manufactured by the defendant that the plaintiff alleged was unreasonably dangerous. The plaintiff claims that if the saw had been designed with a riving blade or riving knife (used interchangeably), the kickback that he contends caused Ryan's accident would not have occurred. He thus argues that the absence of a riving blade was a crucial issue in the case.

The defendant characterizes Mr. Bartley's extrajudicial investigation as "a computer search for the availability of riving blades" only and contends that it focused on an irrelevant matter and thus could not possibly prejudice the jury's decision. In our opinion, however, this argument attempts to obscure the big picture by ignoring the totality of Mr. Bartley's investigation. The "availability" of saws with riving blades was just a part of what Mr. Bartley investigated. The summary

statement begins with the general statement that he "personally took to investigate riving blades." It then goes on to say that the investigation included his looking at saws and talking with a store clerk who *then* conducted "a computer search for the availability of riving blades." It is also agreed by the parties that Mr. Bartley visited several stores during his investigation. It is impossible for the court to know to what length this investigation went, and therefore we must assume that what Mr. Bartley characterized as an investigation was just that—an investigation. Webster's Dictionary defines "investigate" as follows: "to observe or study by close examination and systematic inquiry." Webster's Ninth New Collegiate Dictionary 636 (1983).

It is obvious to this court that the investigation of riving blades related directly to a crucial issue in this case—the safe design of the circular saw—and that the information Mr. Bartley obtained may have played a part in the deliberations, resulting in a verdict for the defense. As the court stated in *Haight*, the extraneous information "could have tipped the scales in defendants' favor[ ] and thus may have improperly influenced the verdict." *Haight*, 215 Ill. App. 3d at 370, 575 N.E.2d at 255. It is of additional concern that the plaintiff never had the opportunity to confront or refute the information that Mr. Bartley obtained and may have considered in deciding the case. See *Frede*, 101 Ill. App. 3d at 815, 428 N.E.2d at 1037. We find that the plaintiff met the requisite showing of a probability of prejudice.

■ Here, the presumption of prejudice might have been rebutted by evidence that the information obtained by the juror did not result in any actual prejudice, had the defendant chosen to conduct an evidentiary inquiry of the juror. *Haight*, 215 Ill. App. 3d at 368, 575 N.E.2d at 254; *Frede*, 101 Ill. App. 3d at 816, 428 N.E.2d at 1037. Because the defendant instead chose to rely on the summary, it failed to meet its burden in this regard. It cannot alternatively explain away Mr. Bartley's egregious conduct based on its own interpretation of what that investigation entailed.

The defendant cites to a list of cases wherein the courts found reversible error warranting new trials, based on extrajudicial information obtained by jurors. The defendant attempts to distinguish those cases by arguing that those cases, unlike the instant case, involved situations that impacted a critical issue in the case. Contrary to the defendant's assertions, we find those cases more similar than dissimilar to the situation in our case. See *Wade v. City of Chicago Heights*, 295 Ill. App. 3d 873, 887, 693 N.E.2d 426, 435 (1998) (a juror made a visit to the accident site, relating to a core issue of visibility); *Frede*, 101 Ill. App. 3d at 815, 428 N.E.2d at 1037 (a juror brought a book on boating into the juror room, relating to the crucial question of

failing to keep a proper lookout); *Heaver*, 68 Ill. App. 3d at 239, 386 N.E.2d at 136 (a juror visited the accident site and brought a Rules of the Road booklet and diagram into the jury deliberation room, relating to issues in the case); *Haight*, 215 Ill. App. 3d at 368, 575 N.E.2d at 253 (a juror consulted an almanac and discussed his finding, relating to a crucial issue of visibility); *Holmes*, 69 Ill. 2d at 509-10, 372 N.E.2d at 657 (several jurors made a visit to a shoe store to compare a shoe imprint with that of the defendant, relating to the crucial issue of identity). We conclude that Mr. Bartley's independent investigation was presumptively prejudicial and requires a reversal.

### B. Evidence of Feasible Alternative Design

The plaintiff next contends that the trial court improperly precluded him from putting on evidence of a feasible alternative design during his case in chief and during rebuttal. The defendant responds by arguing that the court did not refuse evidence of a feasible alternative design during the plaintiff's case in chief and properly refused evidence of a feasible alternative design during rebuttal because the plaintiff did not lay a proper foundation. Alternatively, the defendant argues that the evidence was not proper rebuttal evidence and would have been irrelevant and prejudicial.

■ Evidentiary rulings are within the sound discretion of the trial court and will be upheld absent an abuse of discretion that resulted in prejudice to the objecting party. *Brandt v. Uptown National Bank of Moline*, 212 Ill. App. 3d 621, 626-27, 571 N.E.2d 531, 535 (1991). We find that such a prejudicial abuse of discretion occurred in the instant case.

As a part of the defendant's pretrial motions *in limine*, it moved to exclude evidence of the European standards requiring riving blades and evidence of the saws it manufactured with riving blades for sale in Europe. The defendant argued that the European standards were not relevant to any issue in the case and that any reference to the standards would be unfairly prejudicial. Likewise, it argued that any reference to saws that it manufactured in compliance with the European standards would necessarily implicate the European standards and thereby be prejudicial. Additionally, the defendant offered the following admission characterized as a stipulation: "[The defendant] stipulates for the purpose of this trial that it was technologically and economically feasible to design and manufacture a portable saw which would contain a riving knife in 1978." On the basis of this stipulation, it then argued that because it had admitted feasibility, evidence of an alternative feasible design was no longer a contested issue and no longer relevant to issues remaining in the case.

■ Evidence of the feasibility of an alternative design is relevant and material in an action alleging an unreasonably dangerous product under both negligence and strict liability theories. See *Sutkowski v. Universal Marion Corp.*, 5 Ill. App. 3d 313, 319, 281 N.E.2d 749, 753 (1972). The definition of feasibility set out in the products liability case of *Sutkowski* was later approved by the Illinois Supreme Court in *Kerns v. Engelke*, 76 Ill. 2d 154, 390 N.E.2d 859 (1979), wherein the court stated, " 'feasibility includes not only the elements of economy, effectiveness[,] and practicality but also the technological possibilities viewed in the present state of the art.' " *Kerns*, 76 Ill. 2d at 163, 390 N.E.2d at 863, quoting *Sutkowski*, 5 Ill. App. 3d at 319, 281 N.E.2d at 753. Underlying this precept is the policy consideration that manufacturers should not be held accountable if safer alternatives were not feasible. *Kerns*, 76 Ill. 2d at 163, 390 N.E.2d at 863. The *Kerns* court queried but did not answer the question of whether, in a products liability case based on a defective design, a plaintiff was required to plead and prove an alternative design, since the plaintiff had done so in that case. *Kerns*, 76 Ill. 2d at 164, 390 N.E.2d at 864. In a recent products liability case, *Hansen v. Baxter Healthcare Corp.*, 198 Ill. 2d 420, 764 N.E.2d 35 (2002), the supreme court reiterated the *Kerns* court's holding, stating, "[A] plaintiff may demonstrate that a product is unreasonably dangerous because of a design defect by presenting evidence of an alternative design that would have prevented the injury and was feasible in terms of cost, practicality[,] and technological possibility." *Hansen*, 198 Ill. 2d at 436, 764 N.E.2d at 45.

Where there is no genuine dispute regarding the feasibility of an alternative design, the courts are split on whether the trial judge may properly exclude that evidence. In *Holmes v. Sahara Coal Co.*, 131 Ill. App. 3d 666, 673, 475 N.E.2d 1383, 1388 (1985), a products liability case, the trial court granted a motion *in limine* to exclude evidence of a postoccurrence modification, which was offered to show the feasibility of an alternative design. This court found the exclusion to be error even though the defendant had admitted to the feasibility of an alternative design (although we found that it was not reversible error because the evidence came in anyway). *Holmes*, 131 Ill. App. 3d at 673, 475 N.E.2d at 1388. The *Holmes* court stated: "[Evidence of modifications was] properly admitted for the purpose of demonstrating that Caterpillar's original design was defective, notwithstanding Caterpillar's stipulation regarding the feasibility of an alternate design. Caterpillar's stipulation that it was feasible to design a tractor-scraper upon which plaintiff would not have been injured cannot reasonably be characterized as a concession that Caterpillar's actual design resulted in a defective product; rather, Caterpillar's stipulation

conceded but one element of a necessarily complex determination."
*Holmes*, 131 Ill. App. 3d at 673, 475 N.E.2d at 1388.

A subsequent Second District decision, *Davis v. International Harvester Co.*, 167 Ill. App. 3d 814, 823, 521 N.E.2d 1282, 1288 (1988), criticized the *Holmes* court for holding that evidence of a postoccurrence change is admissible "to prove the ultimate fact that the defendant's product was defective as originally designed." The *Davis* court held that evidence of a postoccurrence change is admissible only to prove that an alternative design was feasible but not to prove the ultimate fact that the product was defective. *Davis*, 167 Ill. App. 3d at 823, 521 N.E.2d at 1288. The court in *Davis* found that the trial court had properly excluded evidence of subsequent design changes, following a stipulation by the defendant that an alternative design of the product was feasible. *Davis*, 167 Ill. App. 3d at 824-25, 521 N.E.2d at 1289. After a discussion about the potential for prejudice outweighing any probative value, the court concluded by finding that the trial court had not abused its discretion in accepting the defendant's stipulation and excluding the plaintiff's evidence of subsequent design changes. *Davis*, 167 Ill. App. 3d at 824-25, 521 N.E.2d at 1288-89. One reason given was that there was no genuine dispute regarding an alternative feasible design because the defendant had argued that the product in question was not the proximate cause of the injury. *Davis*, 167 Ill. App. 3d at 824, 521 N.E.2d at 1289.

■ We adhere to this court's earlier ruling in *Holmes* and decline to follow the *Davis* court and hold that evidence of an alternative feasible design may not be excluded on the basis of an admission. To do so may deprive a plaintiff of important proof that the product was unreasonably dangerous because of a design defect. In the instant case, since the defendant does not intend by its admission to concede a design defect, an alternative feasible design remains a relevant issue. "If the offer to stipulate or not to dispute does not cover all purposes for which the evidence is relevant, the evidence will not be excluded." M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 403.1, at 192-93 (7th ed. 1999).

■ Although the plaintiff here argues that during his case in chief he was improperly prevented from introducing evidence of an alternative feasible design, we are unable to find in the record, nor is the plaintiff able to point to, any ruling by the trial judge that precluded him from introducing evidence regarding the European saws manufactured by the defendant. A review of the record reveals that after the court made its ruling excluding any reference to the European standard, it addressed the motion to exclude the European saws, stating as follows:

"The motion is denied. I believe that since one of the issues of proof that they have to prove is that it's a feasible design and it's—and what are the other words? ***[ ] practical and all that, they can introduce the saws to show that other saws are made with this riving knife and were at the time. It goes to all of that. And your stipulation—and it will be limited, and you know, I'll give a limited instruction, but I believe they do have the right to introduce and show that. *** [I]f it's using a design that existed in 1978, that would be appropriate."

While we believe that evidence of an alternative feasible design, including evidence regarding the Black and Decker saws with riving knives, should have been allowed, because the plaintiff is unable to point to any ruling that precluded the introduction into evidence of the Black and Decker saws made for the European market and because the plaintiff is unable to show where he attempted to introduce those saws but was denied their introduction, we find no adverse ruling to pass judgment on.

■ Turning to the plaintiff's corollary argument regarding rebuttal, we find error in the court's ruling excluding the European saws and the testimony of the plaintiff's expert, Mr. Amoroso. This argument turns on the contention that the defendant contradicted its stipulation regarding an alternative feasible design, through a number of expert witnesses who attacked the design of saws with riving blades on the basis of effectiveness, practicality, and safety, thereby rendering the stipulation all but meaningless. We agree with the plaintiff that the court's refusal to allow testimony in rebuttal regarding the Black and Decker European saws, once various defense witnesses had testified that saws with riving blades were essentially ineffective, impractical, and possibly dangerous, left the plaintiff at a distinct disadvantage and allowed the defendant to "have its cake and eat it, too," since it could *bash* saws with riving blades without the jurors knowing that it manufactured the very kind of saws it disparaged. See *Schmidt v. Ameritech Illinois*, 329 Ill. App. 3d 1020, 1041, 768 N.E.2d 303, 321 (2002). However, having found that evidence of alternative design should have been permitted in the plaintiff's case in chief, the fact that the defendant violated its stipulation has no bearing on our finding that in rebuttal it was error to exclude evidence of the saws, although it does demonstrate the danger in allowing such a hollow admission. The effect of the court's ruling here deprived the plaintiff of one of the most effective means of refuting the defendant's experts' claims regarding riving blades—that the defendant itself manufactured what the plaintiff contended was a safe and feasible (*i.e.*, effective and practical) saw—one with a riving blade. What better evidence could the plaintiff present than the defendant's own design?

The defendant argues that the court properly excluded rebuttal evidence of European saws because (1) the plaintiff did not lay a proper evidentiary foundation, (2) it was not proper rebuttal evidence because saws made in compliance with the European standards were irrelevant, (3) the introduction of the European saws would have necessitated the introduction of the European standards, and (4) the prejudice would have outweighed any probative value. Addressing the defendant's assertions in order, we find as follows. (1) The defendant conceded in its stipulation that an alternative feasible design—*i.e.*, one with a riving blade—was available at the time it manufactured the saw involved in the accident. Further, the plaintiff *did* lay a proper foundation through an offer of proof by its expert, Mr. Amoroso, who testified that the saw involved in the accident was almost identical in design to the Black and Decker saws for sale in Europe, with the exception of the riving blades. (2) As previously discussed, the Black and Decker saws made pursuant to the European standards are relevant because they were offered as proof of an alternative feasible design irrespective of the fact that they are in compliance with European standards. (3) and (4) We fail to see why the introduction of the saws made for sale in Europe would have necessitated the introduction of the European standards or why any reference to the European standards would have unduly prejudiced the defendant. If the defendant felt compelled to present the reason for manufacturing saws with riving blades in Europe, nothing would have prevented it from putting forth this evidence. The defendant then could have fully developed its defense by presenting evidence that, according to its own experts, the same saws could not pass the voluntary standards in the United States without modification.

We believe that the plaintiff was so prejudiced by the juror misconduct and the exclusion of evidence of the Black and Decker saws made for sale in Europe that a new trial is required.

## III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Williamson County is reversed, and the cause is remanded with directions that the plaintiff be granted a new trial.

Reversed; cause remanded with directions.

MAAG and DONOVAN, JJ., concur.